ANTHONY GRANDISON a/k/a JAMES WILLIAMS
*v.* STATE OF MARYLAND

[No. 1279, September Term, 1975.]

*Decided September 17, 1976.*

The cause was argued before ▮ GILBERT, MENCHINE and MOORE, JJ.

*Robert F. Freeze, Assigned Public Defender,* for appellant.

*Deborah K. Handel, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Roy Breslow, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Anthony Grandison, also known as James Williams, was convicted by a jury in the Criminal Court of Baltimore under an indictment charging that he carried a handgun in violation of Article 27, § 36B. He was acquitted on two more serious charges.

Grandison had been indicted under the following six indictments:

*Indictment*

| No. | Date of Offense | Offense Charged |
|---|---|---|
| 57500867 | November 6, 1974 | Assault with intent to murder Samuel Mason. |
| 57500868 | November 6, 1974 | Robbery of Samuel Mason with a dangerous and deadly weapon. |
| 57500869 | November 18, 1974 | Possession of a handgun in violation of Article 27, § 36B. |
| 57500870 | November 18, 1974 | Obliterating serial number on handgun. |
| 57500871 | November 22, 1974 | Attempted escape. |
| 57500872 | November 22, 1974 | Assault. |

Acting pursuant to Maryland Rule 734 the trial judge ordered indictments 57500867, 8 and 9 to be tried together. Grandison's motion for a severance was granted as to indictments 57500870, 1 and 2 pursuant to Rule 735.

At arraignment, Grandison pleaded not guilty to all three indictments but attempted to obtain a jury trial as to indictments 57500867 and 8 and a court trial as to 57500869. The trial judge declined to permit the case to be so divided, requiring the appellant to go forward as to the three joined indictments either with a jury or a non-jury trial as to all. The case then proceeded to trial before a jury. Grandison was acquitted as to indictments 57500867 and 8. He was convicted under indictment 57500869 and sentenced to a term of eighteen months imprisonment.

He thus suggests the questions presented on appeal:

"I. Was the appellant denied a speedy trial?
II. Was the evidence sufficient to sustain the conviction?
III. Should there have been a severance as to indictments?
IV. Should the pretrial motions have been granted?
V. Should the court have granted a motion for mistrial?"

## Speedy Trial

Appellant contends that he was denied his Sixth Amendment right to a speedy trial. He was arrested on November 18, 1974. His trial was commenced on July 23, 1975. We reject his contention and find it necessary only to examine that period of delay.

Following appellant's arrest on November 18, 1974, a preliminary hearing was scheduled for December 11, 1974. The hearing was postponed at the request of the accused to permit him to obtain private counsel.

A second hearing, scheduled for January 16, 1975, was postponed at the request of private counsel for the accused.

A third hearing, scheduled for February 7, 1975, was postponed when appellant's private counsel obtained permission to withdraw from the case because he had been informed by a prosecution witness that anonymous

telephone calls had been received threatening the latter if he appeared at the next scheduled hearing.

On February 7, 1975, appellant was advised that he could speak to the public defender, but declined to do so because he did not care for representation by the office of the Public Defender.

Private counsel was not thereafter engaged. When it became apparent to assignment authorities of the Supreme Bence of Baltimore City that Grandison had not arranged for private counsel, hearing was scheduled before Judge Shirley B. Jones on May 13, 1975. At that hearing the following colloquy between court and counsel occurred:

"[THE COURT]: When you talk to your lawyer as I indicated, these are matters which you should discuss with him and he will assist you in handling them. They will not be heard today. As a matter of law you will have a lawyer from the Public Defender's office. This gentleman seated at the trial table here is from that office. I'm going to ask him to have the lawyer contact you promptly so you might discuss with him these various motions and he will know the mechanics for getting them set down for a hearing. When he does contact you, you can go over with him these motions that you filed.

\* \* \*

[APPELLANT]: Your Honor, see, I'm serving time. I'm already serving time and that's why I'm saying you haven't given me no definite

answer when I'll see the Public Defender.

[THE COURT]: I'm sorry I cannot give you that answer. I am simply directing the Public Defender representative here to have the lawyer come see you as soon as the appointment is made. I cannot tell you when he will be here.

[APPELLANT]: Your Honor, You don't have the authority to appoint me an attorney other than the Public Defender because I don't have no confidence in the Public Defender at all.

[THE COURT]: I have no authority to appoint any lawyer other than the Public Defender's office. [1]

[APPELLANT]: I don't want a Public Defender.

[THE COURT]: That's your choice to make. If you decide or decline their services, you have a right to do that. But he will be available to help you.

---

1. Article 27A in appropriate part reads as follows:

"§ 4. *Duty to provide legal representation.*

(a) It shall be the primary duty of the Public Defender to provide legal representation for any indigent defendant, eligible for services under this article. Legal representation may be provided by the Public Defender, or, subject to the supervision of the Public Defender, by his deputy, by district public defenders, by assistant public defenders, or by panel attorneys as hereinafter provided for.

§ 6. *Panel attorneys; courts not deprived of authority to appoint counsel in certain situations.*

(f) Nothing in this article shall be construed to deprive any court mentioned in § 4 (b)(2) of this article of its authority to appoint an attorney to represent an indigent person where there is a conflict in legal representation in a matter involving multiple defendants and one of the defendants is represented by or through the Office of the Public Defender, or where the Office of the Public Defender declines to provide representation to an indigent person entitled to representation under this article."

There was no such exception here.

> [APPELLANT]: In other words you're saying I can't refuse to be represented by a Public Defender.
>
> [THE COURT]: You can refuse his services, yes. You have the right to do that."

Notwithstanding the continued expression of dissatisfaction by the appellant, counsel was appointed for him under the Public Defender Act. (Article 27A). The appearance of an assistant public defender was entered for the appellant on that very date.

Thereafter, on June 5, 1975, an experienced panel attorney filed his appearance for the appellant. The trial, requiring eight trial days, began on July 23, 1975.

If any part of the delay is attributable to the State it is miniscule. We agree fully with the trial judge that under the circumstances shown by this record the delay does not reach constitutional dimensions. Accordingly, "there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo,* 407 U. S. 514, 530, 33 L.Ed.2d 101, 117, 92 S. Ct. 2182, 2192 (1972). There is no evidence that the State shirked "its constitutional duty to make a diligent, good faith effort to bring [Grandison] to trial." *Moore v. Arizona,* 414 U. S. 25, 26, 38 L.Ed.2d 185, 186, 94 S. Ct. 188, 190 (1973).

## Sufficiency of the Evidence

The contention that the evidence was not legally sufficient is frivolous. Two police officers observed that the appellant was carrying a handgun and removed it from his person at the time of a lawful arrest. Seizure and use of the weapon as evidence was lawful.

## Severance

Indictments 57500867 and 8 (as to which the appellant was acquitted) charged respectively (a) assault with intent to murder and (b) the robbery with a dangerous weapon, of one Samuel Mason.

At the severance hearing the State made the following proffer:

"MR. BRESLAW: The gun that was recovered on the 18th was missing a portion which was found at Mr. Mason's office on the 6th by the officers and they matched up to be the same gun, a portion of the same gun found on the 6th, matching the portion that was remaining portion found on the 18th and the State feels those four [2] charges should be tried together."

At the conclusion of the appellant's motion for severance, the trial judge said:

THE COURT: I'll grant the motion to sever to the following extent, i.e., that the cases 57500867, 57500868, and 57500869 will be tried jointly and separately from the remaining indictments in the case. The remaining indictments which appear on the docket will be treated as not called to trial and will be so entered at the time of the verdict. The reason from colloquy with counsel all of the evidence necessary to prove the case is in 869 would be proffered by the State to be admissible at the time of 867 and 868, the orderly and efficient administration of justice demands that the indictments be tried at the same

---

**2.** The fourth indictment 57500870, charged obliteration of the serial number of the handgun. The trial judge granted severance as to that indictment.

> time and there's no risk of any prejudice to the Defendant. If it turns out that the State's proffer is totally incorrect and cannot be proved, that's a matter for disposition at the time of the trial. Certainly on the proffers made, the Court has no alternative but to permit those three cases to be tried together."

At trial the proffer by the State was supported fully by evidence.

In *Sutton v. State*, 25 Md. App. 309, 334 A. 2d 126 (1975), we said at 313, [128-29]:

> "One of the factors to be considered in the trial judge's determination of whether to grant a severance is the saving of the time and the expense that unnecessary separate trials would entail. *Mason v. State*, 18 Md. App. 130, 305 A. 2d 492 (1973); *Peterson v. State*, 15 Md. App. 478, 292 A. 2d 714 (1972). Moreover, the decision as to whether to order separate trials is vested in the sound discretion of the trial judge. *Maloney v. State*, 17 Md. App. 609, 304 A. 2d 260 (1973). If it appears that the facts to be proved in one case are substantially the same as those in the other or that they are so closely related that the evidence necessary to show one crime is intertwined with the other, there is no reason to order a severance unless the joinder is prejudicial."

The trial court's discretion clearly was properly exercised in the subject case.

In a second string to his severance bow, appellant attempted to accomplish, by election for a court trial as to indictment 57500869, the severance he was unable to achieve upon his motion for severance. The trial judge rejected his effort thus to divide the trial.

Maryland Rule 741 reads as follows:

*"Jury Trial — Election.*

An accused may elect to be tried by jury or by the court. Such election shall be made by the accused in open court when first called upon to plead after he is represented by counsel of record or has waived counsel. If an accused elects to be tried by the court, the State may not elect a jury trial. The court may, in its discretion and for good cause shown, at any time prior to the trial permit the accused to change his election."

Standing alone, Rule 741 lends a surface appearance of validity to appellant's contention that he was denied a right conferred by rule. But Rule 741 does not stand alone.

In *Baltimore Transit Co. v. Mezzanotti*, 227 Md. 8, 174 A. 2d 768 (1961) it was said at 19-20 [774]:

". . . the wording of Rule 819 is general in its terms and does not, itself, place any limitation on the terms 'any previous interlocutory order'; but it is equally true that statutes relating to the same subject matter will be construed, when possible, so as to harmonize with each other, and not produce unreasonable or foolish results, and the same rules of construction, we think, apply to the Maryland Rules. If the construction of Rule 819, attributed to it by the appellant, be the true one, it is difficult to discover the purpose and usefulness of Rule 422 (naming sanctions that the trial courts may direct in order to force recalcitrant parties and their officers and agents to answer designated questions, etc.), which, in effect would be rendered nugatory, if a party can flout the order of court directing him to answer certain questions and await the outcome of the appeal on a final judgment, by simply posting a bond. Moreover, such construction would take away from the trial courts their time-honored power and authority to control, and to direct, the

course of the proceedings in their respective courts, and place the same in the hands of the litigants. Such dire and drastic results were not contemplated in the adoption of Rule 819."

Similarly, it was said in *Johnson v. State*, 274 Md. 29, 41, 333 A. 2d 37, 43 (1975):

"The meaning of a Rule 'does not depend upon the niceties of definition but upon the reasonable intendment of the language used in the light of the purpose to be effectuated,' *Brown v. State*, 237 Md. 492, 504, 207 A. 2d 103, 111 (1965), citing *Shub v. Simpson*, 196 Md. 177, 191, 76 A. 2d 332, 337-38 (1950), and *Darnall v. Connor*, 161 Md. 210, 214-16, 155 A. 894, 896-97 (1931); and the Maryland Rules, like statutes, when dealing with the same subject matter will be construed so as to harmonize with each other and not produce an unreasonable result."

Rule 741 must be read and considered along with Rules 716 and 734. Rule 716 reads in appropriate part as follows:

"*Joinder.*

a. *Offenses.*

Two or more offenses may be charged in the same indictment in a separate count for each offense."

In *Wanzer v. State*, 202 Md. 601, 608, 97 A. 2d 914, 917 (1953), it was said:

"The defendant cannot demand [severance] as of right where there is no basis for thinking that the joinder of the counts will embarrass him in the trial. Such was the rule at common law and it has been consistently followed in this State."

Rule 734 reads as follows:

"*Joint Trial of Indictments.*

The court may order two or more indictments to

be tried together if the offenses and the defendants, if there be more than one, could have been joined in a single indictment."

In *Lewis v. State*, 235 Md. 588, 202 A. 2d 370 (1964), it was said at 590 [371]:

"Maryland Rule 734 provides that 'The court may order two or more indictments to be tried together if the offenses and the defendants, if there be more than one, could have been joined in a single indictment.' The Rule is couched in simple language and its purpose apparent: to save the time and expense of separate trials under the circumstances named in the Rule, if the trial court, in the exercise of its sound discretion deems a joint trial meet and proper."

Of course, joinder may not be prejudicial to the accused. Rule 735 reads as follows:

*"Prejudicial Joinder.*

If it appears that an accused or the State will be prejudiced by a joinder of offenses or of defendants in an indictment, or by joinder for trial together, the court may order an election or separate trials of counts, grant separate trials of defendants or provide such other relief justice requires. A motion under this Rule may be made only before the jury is sworn, or, where trial by jury is waived, before any evidence is received."

We said in *Peterson, Deal & Hunt v. State*, 15 Md. App. 478, 495, 292 A. 2d 714, 724 (1972):

"Underlying all considerations of the proper exercise of judicial discretion under Maryland Rule 735 as to whether to order separate trials is the fundamental concern of whether 'it appears that an accused or the State will be prejudiced by a joinder of offenses or of defendants ... for trial together ....' "

The trial courts today are struggling to keep abreast of a seemingly ever growing criminal caseload. The ability of the courts fairly to assure due process of law to all accused of crime would be lessened materially if the salutory joinder provisions of Rules 716 and 734 were susceptible to utter destruction by manipulation of Rule 741 in the manner attempted by this appellant.

We are persuaded and we hold that Rule 741 must be read in conjunction with Rules 716 and 734. When so read, we think that it is apparent that Rule 741 applies to that single trial entity that consists of all joined counts of all joined indictments that have survived attack under Rule 735.

Such an interpretation accords full and complete justice to the accused without production of unreasonable or foolish results. *Mezzanotti* and *Johnson*, both *supra.*

## Pretrial Motions

The motion to dismiss the indictments upon the ground that erroneous information had been given to the grand jury was quite properly rejected. *Everhart v. State*, 274 Md. 459, 486-88, 337 A. 2d 100, 116 (1975).

The motion to suppress use of the handgun is without merit. The weapon was seized as an incident to lawful arrest. It was clearly admissible tangible evidence.

The motion seeking disqualification of the trial judge is equally without merit. See *Silbert v. State*, 12 Md. App. 516, 537, 280 A. 2d 55, 67 (1971).

## Motions for Mistrial

A state witness on one occasion referred to a garment worn by the appellant as "a prison coat." On a second occasion the same witness declared that a coat worn by the accused "meant something to me." In both instances the trial judge sustained objections by counsel for appellant and ordered the answers stricken. Although denying trial counsel's motion to dismiss, the trial judge did advise trial counsel that he would specifically instruct the jury to ignore the testimony or give a general instruction at the trial's

conclusion. Of the two proffered courses by the trial judge, trial counsel elected a general instruction to the jury. It was given.

There was testimony both by the appellant himself and by a representative of the State Work Release Program called by him as a witness, that the appellant was under sentence at the time of the offenses and was participating in the program.

The third motion for mistrial occurred when the prosecutor commented upon the absence of a witness from appellant's place of employment as to his whereabouts on November 6, 1974. The short answer to a contention that this constituted grounds for a mistrial is that he was acquitted of the offense charged on that date.

In *Wilhelm v. State,* 272 Md. 404, 326 A. 2d 707 (1974), it was said at 429 [723]:

> "A request for a mistrial in a criminal case is addressed to the sound discretion of the trial court and the exercise of its discretion, in a case involving a question of prejudice which might infringe upon the right of the defendant to a fair trial, is reviewable on appeal to determine whether or not there has been an abuse of that discretion by the trial court in denying the mistrial. *Basiliko v. State,* 212 Md. 248, 260-61, 129 A. 2d 375, 381 (1957). The decision by the trial court in the exercise of its discretion denying a mistrial will not be reversed on appeal unless it is clear that there has been prejudice to the defendant."

We perceive no prejudice to the appellant.

*Judgment affirmed.*