JOHN LEE McKNIGHT, JR. *v.* STATE OF MARYLAND

[No. 149, September Term, 1976.]

*Decided July 6, 1977.*

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ.

*Mark Colvin, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender,* on the brief, for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Clarence W. Sharp, Assistant Attorney General,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

The question presented here is whether appellant should have been granted separate trials on four independent and distinct offenses, where evidence as to each individual offense would not have been mutually admissible at separate trials. We granted certiorari after the Court of Special Appeals, in affirming appellant's convictions by a jury in the Criminal Court of Baltimore under each of four criminal informations, held in *McKnight v. State,* 33 Md. App. 280, 286, 364 A. 2d 116 (1976), that the trial court had not abused its discretion in denying a severance of the cases. We reverse.

During a one-month period in late 1974, a series of four robberies was committed within the same neighborhood of Baltimore City in which appellant and each of the victims resided. On each occasion, the victim was a solitary male; in three of the four instances, the victim's trouser pockets were

ripped. Two of the victims claimed to have been robbed by at least two male assailants and the two remaining victims were each robbed by one male. Each victim identified appellant as an assailant. The first victim was grabbed from behind at night, pulled down, and kicked in the face. His assailant "tore [his] clothes off" and took $1.25. The second episode occurred in the same alley at noontime some 11 days later. On this occasion, a young man grabbed the victim by the lapel of his jacket, pointed a pair of hedge shears at his genitals, and demanded his money. A confederate rifled the victim's pockets and removed $1.28. Both fled on foot. Three weeks later, the third victim was accosted in midafternoon by a man who grabbed him, demanded money, struck him on the leg, and removed $130 from his pocket. Late on the following morning, the fourth victim was grabbed from behind and thrown backward. The sum of $5 was taken from his right trouser pocket, which was ripped in the process.

In addition to denying both his participation in the four crimes and his presence on the immediate scene of each, appellant offered alibi defenses to the first two, which he corroborated with the testimony of several witnesses. He also produced a police officer who impeached the testimony of the first prosecuting witness in certain material respects. With regard to the third and fourth episodes, appellant simply testified as to his whereabouts on those two occasions, but without the benefit of any corroborating witnesses.

Because appellant's pretrial motion for separate trials had been denied, he requested at the outset of the trial that a cautionary instruction be given to the jury. The trial judge complied:

> "THE COURT: Ladies and gentlemen of the jury, this trial involves four separate alleged offenses allegedly committed by the Defendant on four separate days, and you are not to consider the evidence relating to one of these occurrence[s] as having any relevance or bearing on any other alleged occurrence. The Defendant is entitled to be

judged separately on each of these separate occurrences. . . ."

At the conclusion of the evidence, the court also included a similar statement in its advisory instructions to the jury.

Each of the four criminal informations filed by the State's Attorney contained eight charges ranging from armed robbery to the use of a handgun in the commission of a felony. The jury found appellant guilty of robbery and assault in the first case; robbery with a dangerous or deadly weapon in the second case (involving the shears); and robbery in the third and fourth cases.

In affirming the convictions, the Court of Special Appeals held that there was no abuse of discretion in the denial of the severance. It rested this decision on the "similarity of circumstances and of the conduct of the appellant in the perpetration of the crimes . . ." *McKnight v. State,* 33 Md. App. at 285-86. The court recognized that "the evidence of guilt in each individual crime charged here would not be mutually admissible at separate trials," *id.* at 285, despite its conclusion that the crimes "formed part of a general scheme of unlawful conduct," *id.* at 284. This it found from the fact that three of the four victims were men in their late 50's or 60's; that the victims and appellant resided in the same neighborhood; that three of the victims recognized appellant; and that the modus operandi of the assailant on the four occasions was similar.

(1)

Joinder and severance of criminal trials are governed in this state by Maryland Rule 745,[1] subsection c of which provides in relevant part:

"If it appears that any party will be prejudiced by the joinder for trial of counts, . . . the court *may,* upon its own motion or the motion of any party,

---

1. Joinder and severance of criminal trials had been governed by Maryland Rules 734 and 735, which were controlling when this case was tried and which, by the revision of Chapter 700, effective July 1, 1977, were consolidated into Rule 745. In pertinent part, the new rule is virtually identical to its precursors.

order separate trials of counts, . . . or grant any other relief as justice requires." (Emphasis added.)

Rule 745 c, in relevant part, is patterned on Rule 14 of the Federal Rules of Criminal Procedure. Under the Maryland rule, as is true under its federal counterpart, severance is committed to the discretion of the trial judge. *Baumgartner v. State*, 21 Md. App. 251, 253, 319 A. 2d 592, *cert. denied*, 272 Md. 737 (1974); *DiNatale v. State*, 8 Md. App. 455, 458, 260 A. 2d 669 (1970); *Jennings v. State*, 8 Md. App. 312, 315, 259 A. 2d 543 (1969).

The standard established by Rule 745 c is merely a restatement of the test applied at common law:

". . . The matter of a misjoinder is generally left to the discretion of the trial court, and the courts will guard against injustice and abuse whenever apparent, and not permit such a joinder of counts as will embarrass the traverser in his defense by, in the court's sound discretion, quashing the indictment, permitting a *nolle prosequi* as to a count or counts, or compelling the prosecution to elect on which count or counts to proceed. . . ." *Simmons v. State*, 165 Md. 155, 165-66, 167 A. 60 (1933) (citations omitted).

*Accord, Wanzer v. State*, 202 Md. 601, 608, 97 A. 2d 914 (1953); *see State v. McNally*, 55 Md. 559, 563-64 (1881); *State v. Bell*, 27 Md. 675, 678 (1867). It is particularly appropriate that Rule 745 c be patterned on Federal Rule 14, since the early federal practice was also rooted in the common law. *See e.g., McElroy v. United States*, 164 U. S. 76, 80-81, 17 S. Ct. 31, 41 L. Ed. 355 (1896); *Pointer v. United States*, 151 U. S. 396, 403, 14 S. Ct. 410, 38 L. Ed. 208 (1894).[2]

The rationale traditionally offered to justify joinder of similar offenses is that a single trial effects an economy, by

---

2. Prior to the adoption of the Federal Rules of Criminal Procedure, the matter of severance in federal criminal cases was governed only by statute, 18 U.S.C. § 557 (1940). The earlier cases, however, remain pertinent because of the similarity between the prior statutes and the current rule. Drew v. United States, 331 F. 2d 85, 87 n. 3 (D.C. Cir. 1964).

saving time and money, to the prosecution, the defendant, and the criminal justice system.[3] Where evidence is not mutually admissible, however, each crime must be proved by its own evidence and witnesses. Consequently, in such cases the saving of time and money allegedly effected by a joint trial is questionable, since the offenses, in any event, are separate and distinct. " 'Ordinarily, the only time saved by such joinder is the selection of one jury rather than two. Except for character witnesses, the evidence will usually be entirely separate.' " *United States v. Foutz*, 540 F. 2d 733, 738 (4th Cir. 1976).

Similar offense joinder has been criticized as being prejudicial to the defendant in three important respects. *Drew v. United States*, 331 F. 2d 85, 88-89 (D.C. Cir. 1964). First, he may become embarrassed, or confounded in presenting separate defenses. *McElroy v. United States*, 164 U. S. at 80-81; *Pointer v. United States*, 151 U. S. at 403; *Simmons v. State*, 165 Md. at 165. Secondly, the jury may cumulate the evidence of the various crimes charged and find guilt when, if the offenses were considered separately, it would not do so. At the very least, the joinder of multiple charges may produce a latent hostility, which by itself may cause prejudice to the defendant's case. Thirdly, the jury may use the evidence of one of the crimes charged, or a connected group of them, to infer a criminal disposition on the part of the defendant from which he may also be found guilty of other crimes charged. It is this form of prejudice which concerns us here, although there is much force in appellant's argument that he was also affected by the two other types of prejudice. In any given case of similar offense joinder, therefore, the trial judge must balance the likely prejudice caused by the joinder against the important

---

**3.** The actual development of similar offense joinder suggests that the economy ostensibly effected by a single trial had little to do with the practice. Rule 8 (a) of the Federal Rules of Criminal Procedure is derived from an Act of Congress passed in 1853 to curb abuses by marshals in drawing indictments. They were charging "exhorbitant fees for indictments," and were drawing as many as they could. Note, *Joint and Single Trials Under Rules 8 and 14 of the Federal Rules of Criminal Procedure*, 74 Yale L.J. 553, 560 n. 37 (1965).

considerations of economy and efficiency in judicial administration.

Two lines of authority have emerged from the cases seeking to reconcile the conflicting considerations of prejudice and economy within the framework of discretion accorded the trial judge. The first holds that a severance should be ordered where there has been a joinder of similar but unrelated offenses, if the evidence as to each crime would not be mutually admissible at separate trials. *McElroy v. United States*, 164 U. S. at 81; *United States v. Foutz*, 540 F. 2d at 738; *State v. Jonas*, 169 Conn. 566, 363 A. 2d 1378, 1381-82 (1975); *People v. Barnett*, 66 Mich. App. 99, 238 N.W.2d 208, 209 (1975); *Lambert v. State*, 73 Wis. 2d 590, 243 N.W.2d 524, 531 (1976); *see Grandison v. State*, 32 Md. App. 705, 710-12, 363 A. 2d 523 (1976), *cert. dismissed*, 280 Md. 259 (1977) (affirmance of trial court decision denying severance on ground that evidence would be mutually admissible); *People v. Martinez*, 549 P. 2d 758, 760-61 (Colo. 1976); *State v. Brower*, 289 N. C. 644, 224 S.E.2d 551, 561-62 (1976); *State v. Sanchez*, 14 Or. App. 234, 511 P. 2d 1231, 1233-34 (1973); *Reagan v. State*, 525 S.W.2d 683, 685 (Tenn. Crim. App. 1974).

The reasoning behind the rule permitting a joint trial of crimes where the evidence would be mutually admissible is evident. Where evidence of one crime would be admissible at a separate trial on another charge, a defendant will not suffer any additional prejudice if the two charges are tried together. It is equally clear, however, that where offenses are joined for trial because they are of similar character, but the evidence would not be mutually admissible, the prejudicial effect is apt to outweigh the probative value of such evidence.

Another line of cases has taken a different position. This view was apparently first enunciated by Judge Learned Hand in *United States v. Lotsch*, 102 F. 2d 35, 36 (2d Cir.), *cert. denied*, 307 U. S. 622 (1939), and refined in *Drew v. United States*, 331 F. 2d at 91-92, where the court said:

> "In summary, then, even where the evidence would not have been admissible in separate trials,

if, from the nature of the crimes charged, it appears that the prosecutor might be able to present the evidence in such a manner that the accused is not confounded in his defense and the jury will be able to treat the evidence relevant to each charge separately and distinctly, the trial judge need not order severance or election at the commencement of the trial. If, however, it appears at any later stage in the trial that the defendant will be embarrassed in making his defense or that there is a possibility that the jury will become or has become confused, then, upon proper motion, the trial judge should order severance."

See *Arnold v. United States*, 358 A. 2d 335, 338 (D.C. App. 1976); *Bell v. United States*, 332 A. 2d 351, 353-54 (D.C. App. 1975). *But cf. State v. Orsborn*, 555 P. 2d 509, 514-15 (Mont. 1976) (court cites *Drew* but evidence would have been mutually admissible in any event).

The flaw in the test articulated by the *Drew* court is that it overlooks the reason underlying the "other crimes" rule, which excludes evidence relevant to proof of criminal disposition because such evidence is generally more prejudicial than probative. This exclusionary rule is designed as a matter of policy to prevent prejudice to defendants; if this rationale is valid, prejudice will result from joinder whenever the rule itself is violated, even though the evidence is separable. As the court noted in *United States v. Foutz*, 540 F. 2d at 738 n. 5:

"The 'simple and distinct' test articulated in *Drew* may well be an appropriate standard for measuring the danger of prejudice resulting from the jury's confusing and cumulating the evidence. It does not address itself, however, to the graver mischief possible where the jury, while limiting its consideration of the evidence to the crime to which it relates, properly finds the defendant guilty of one crime but considers that finding probative of his guilt of another."

We think that a defendant charged with similar but unrelated offenses is entitled to a severance where he establishes that the evidence as to each individual offense would not be mutually admissible at separate trials.

(2)

On the record before us, we conclude that the evidence offered to prove appellant's guilt on each of the four robbery charges would not have been mutually admissible against him had he been prosecuted in separate trials. We applied the other crimes rule in *Ross v. State,* 276 Md. 664, 669, 350 A. 2d 680 (1976), where we said:

> "The frequently enunciated general rule in this state, followed uniformly elsewhere, is that in a prosecution for a particular crime, evidence which in any manner shows or tends to show that the accused has committed another crime wholly independent of that for which he is on trial, even though it be a crime of the same type, is irrelevant and inadmissible. ... This principle is merely an application of the policy rule prohibiting the initial introduction by the prosecution of evidence of bad character. Thus, the state may not present evidence of other criminal acts of the accused unless the evidence is 'substantially relevant for some other purpose than to show a probability that he committed the crime on trial because he is a man of criminal character.' ..." (Citations omitted).

As we there said, "an accused may be convicted only by evidence which shows that he is guilty of the offense charged, and not by evidence which indicates his guilt of entirely unrelated crimes ...." *Id.* We noted additional reasons for the rule. "Evidence of other crimes may tend to confuse the jurors or prejudice their minds against the accused and to predispose them to a belief in his guilt." *Id.* Thus, even though evidence tending to prove the defendant's

criminal disposition might logically appear relevant to the layman, it is nevertheless inadmissible because the danger of prejudice outweighs the probative value.

The exceptions to the exclusionary rule, as we also pointed out in *Ross v. State*, 276 Md. at 669-70, are virtually as prominent as the rule itself. The more frequently mentioned exceptions admit evidence tending to establish motive, intent, absence of mistake, common scheme or plan, and identity. *Id.* The State, however, relies upon a further exception known as the "handiwork" or "signature" exception for its contention that the evidence as to each of the four offenses charged here would have been mutually admissible at separate trials, and that therefore appellant suffered no prejudice from the trial judge's refusal to grant a severance. The State, with an obvious view to *Ross v. State*, 276 Md. at 670, argues that the four offenses "were so nearly identical in method as to earmark the commission of those robberies as the handiwork of the Appellant." The signature exception has been described in this manner in C. McCormick, Evidence § 190 at 449 (2d ed. 1972):

> "To prove other like crimes by the accused so nearly identical in method as to earmark them as the handiwork of the accused. Here much more is demanded than the mere repeated commission of crimes of the same class, such as repeated burglaries or thefts. The device used must be *so unusual and distinctive* as to be like a signature." (Emphasis added; footnotes omitted).

We do not think that the four crimes charged here were, under the evidence, "so nearly identical in method as to earmark them as the handiwork of the accused"; nor were they "so unusual and distinctive as to be like a signature." *Id.* The evidence established that all four victims were solitary males, that they and appellant lived in the same neighborhood, which was in the heart of a thickly populated area of Baltimore City, and that in three of the four

instances the victim's trousers were ripped. Although to this extent the four crimes bore a general resemblance to each other, they were hardly impressed with appellant's signature. Unfortunately, yokings or robberies, particularly of older victims walking alone in secluded areas, are not uncommon in the urban milieu. Such similarities as existed here " 'fit into an obvious tactical pattern which would suggest itself to almost anyone disposed to commit a depredation of this sort.' " *United States v. Foutz*, 540 F. 2d at 737; *Drew v. United States*, 331 F. 2d at 93 (robbery of two High's ice cream stores by black male wearing sunglasses); *see United States v. Carter*, 475 F. 2d 349, 350-51 (D.C. Cir. 1973) (per curiam) (two robberies and an assault in midwinter by a man wearing a fur coat and a fur hat; held insufficient similarity). *But cf. Arnold v. United States*, 358 A. 2d at 338-39 (each of two rapists drove light blue Volkswagen, into which he invited his victims as an act of friendly concern for an apparently innocent purpose and suddenly, without provocation, became angry and made threats because of some injury allegedly perpetrated on him or his relative by victim or one of her relatives; held sufficient similarity).

We conclude that the evidence produced here to prove appellant's guilt under each of the four charges would not have been mutually admissible at separate trials for the same offenses. We hold, therefore, that he was sufficiently prejudiced by the denial of his motion for severance to constitute that denial an abuse of discretion, and thus mandate a reversal.

(3)

The State urges that any prejudice resulting from the joint trial of the four robberies was obviated by the cautionary instructions in which the trial judge advised the jury to consider each offense separately. This argument is of dubious merit in light of our conclusion that the evidence as to each offense would not have been mutually admissible at separate trials. The effectiveness of such limiting

instructions is premised on the assumed competency of the jury to disregard the evidence which would be inadmissible in a trial on any one of the charges. The ability of jurors to accomplish this feat is questionable at best.

The practice of issuing limiting instructions is, of course, not unique to joint trials, but is commonly employed where evidence is admitted for a restricted purpose or when inadmissible evidence has been heard by the jury. Recognizing that it is unrealistic to expect jurors to ignore seemingly relevant evidence which they have already heard, eminent jurists have been among the severest critics of the curative instruction. *See e.g., Delli Paoli v. United States,* 352 U. S. 232, 247, 77 S. Ct. 294, 1 L.Ed.2d 278 (1957) (Frankfurter, J., dissenting) ("The fact of the matter is that too often such admonition against misuse is intrinsically ineffective"); *Krulewitch v. United States,* 336 U. S. 440, 453, 69 S. Ct. 716, 93 L. Ed. 790 (1949) (Jackson, J., concurring) ("The naive assumption that prejudicial effects can be overcome by instructions to the jury . . . all practicing lawyers know to be unmitigated fiction."); *Nash v. United States,* 54 F. 2d 1006, 1007 (2d Cir.), *cert. denied,* 285 U. S. 556 (1932) (Learned Hand, J.) (". . . the recommendation to the jury of a mental gymnastic which is beyond, not only their powers, but anybody's else."); *People v. Aranda,* 63 Cal. 2d 518, 407 P. 2d 265, 272, 47 Cal. Rptr. 353 (1965) (Traynor, C. J.) ("A jury cannot 'segregate evidence into separate intellectual boxes.' ").

As we have recognized, the law frequently permits the jury to hear evidence admitted for a limited purpose, and presumes that the jury will comply with an appropriate instruction. But we are unwilling to make that assumption in circumstances such as these, where we have said that the prejudicial effect of the evidence heard by the jury outweighs its probative value. In the context of this case, where we have already rejected the "simple and distinct" test, the cautionary instruction simply cannot cure the prejudice.

616

Accordingly, appellant's convictions for each of the four separate offenses must be reversed, and he must be granted separate trials.[4]

> *Judgment of the Court of Special Appeals reversed; remanded with instructions to reverse the judgments of the Criminal Court of Baltimore and to remand for new trials; costs to be paid by the Mayor and City Council of Baltimore.*

---

**4.** Since appellant is to be afforded new, separate trials, it is unnecessary that we reach the remaining question included in the writ of certiorari.