755 A.2d 553

Harold Kenneth REIDNAUER

v.

STATE of Maryland.

No. 2507, Sept. Term, 1999.

Court of Special Appeals of Maryland.

July 6, 2000.

Julia Doyle Bernhardt, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Zoe M. Gillen, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., Baltimore, and Sandra A. O'Connor, State's Atty. for Baltimore County, Towson, on the brief), for appellee.

Argued before MOYLAN, DAVIS and THIEME, JJ.

DAVIS, Judge.

The instant appeal calls upon us to decide whether the credibility of the two victims, admitted prostitutes, as to the issue of consent, may be established by the corroborative effect of the testimony of the other. Appellant Harold Kenneth Reidnauer was convicted in the Circuit Court for Baltimore County at a bench trial of sexual offenses against Kelly Renee Jones and Cathy Marie McCauley.

The judge consolidated for trial the State's cases in which Jones and McCauley were the complaining witnesses. The circuit court, in the Jones case, found appellant guilty of second degree rape, second degree sexual offense, and second degree assault. In the McCauley case, the court found appellant guilty of attempted second degree rape, attempted second degree sexual offense, fourth degree sexual offense, perverted

practice, false imprisonment, and second degree assault. Appellant was sentenced on November 30, 1999 as follows: twenty years for second degree rape with all but fifteen years suspended in favor of five years probation upon release; a consecutive sentence of ten years, suspended, for second degree sexual offense; a consecutive sentence of five years, suspended, for second degree sexual assault; ten years with all but five years suspended for one count of attempted second degree rape and, for the other count, ten years, suspended; ten years, suspended, for attempted second-degree sexual offense; and three years imprisonment, suspended, for perverted practice. The trial judge merged false imprisonment. In his appeal, appellant raises two issues, which we rephrase as follows:

I. Whether the trial judge erred in joining two cases involving separate victims of rape, sexual assault, and related offenses for trial.

II. Whether the trial court erred in imposing separate sentences for assault.

Because we shall decide appellant's first issue in the affirmative and reverse the judgment of the lower court, we decline to reach the second issue presented.

## FACTUAL BACKGROUND

The offenses occurred in July 1998 and on August 22, 1998 in the Pulaski Highway/Route 40 area in Baltimore County, Maryland. The victims were two women who gave the following accounts of being raped and sexually assaulted.

Jones testified that she was working the corner of Kresson Street and Pulaski Highway in Baltimore City as a prostitute. At approximately 11:00 p.m., appellant approached her and solicited her to perform an act of oral sex. After she agreed and entered his car, he drove to his place of employment, Dean Street Automotive, located in the 7300 block of Pulaski Highway in Baltimore County. When they entered Dean Street Automotive, Jones requested to be paid in advance, but appellant refused. Jones then attempted to leave, but was unable to because the door was locked. When she said that she wanted to leave, appellant refused her request and said, "You are going to do this." Believing submission without

being paid was her only option, Jones complied with appellant's requests and began performing oral sex on him; suddenly, he became extremely rough, slamming her head down and almost choking her.

Appellant forced Jones to engage in oral sex and vaginal and anal intercourse. Appellant used Vaseline from a jar at Dean Street Automotive during coitus and admonished that he would beat her if she did not act as if she was enjoying herself. After appellant was finished, he told Jones that he had AIDS and that he was going to make sure she contracted the virus from him. Jones then dressed and, after appellant opened the outer door, she fled. Two days later, when Jones was arrested for soliciting, she reported the incident to the police.

McCauley is also a prostitute who worked the Pulaski Highway area. In July 1998, McCauley testified that appellant solicited her to perform sexual acts and he drove her to Dean Street Automotive. Once they arrived at Dean Street Automotive, McCauley advised appellant of her price for performing sexual acts and insisted on the use of a condom. In response, appellant told McCauley that he would pay her after she performed the act, but he refused to wear a condom; he then pulled her head down in order for her to perform oral sex on him. After oral sex, appellant demanded intercourse and told her to remove her clothes. When she refused, appellant tore off McCauley's clothes and informed her that he was HIV positive and that he intended to infect every girl working on the strip. He then forced her onto the hood of his car and attempted both vaginal and anal intercourse. Unable to obtain an erection, appellant put Vaseline on his fingers and proceeded to penetrate her vaginally and anally. McCauley repeatedly asked appellant to stop but he refused. As he was putting Vaseline on a wooden pole, a car pulled up outside Dean Street Automotive, whereupon appellant ordered McCauley to get dressed. Outside Dean Street Automotive, he told her that he had a gun, ordered her into his truck, and then said that he was not sure what he was going to do with her. As they approached a traffic light, McCauley managed to get out of the truck and escaped. McCauley testified that

she went immediately to a Dunkin Donuts and called a police officer whom she knew but he was not available. The next evening, McCauley saw appellant and, according to her testimony, he tried to hit her with his truck while she was working the street. Following appellant's actions, McCauley notified the police.

Detective Karen Quinter testified that she went to Dean Street Automotive and, during the course of her investigation, found a jar of petroleum jelly on appellant's workbench. When Detective Quinter questioned appellant about the incidents with Jones and McCauley, he admitted taking prostitutes to Dean Street Automotive, but claimed that he engaged only in oral sex and denied any non-consensual conduct. Later, appellant admitted that he attempted to have sexual intercourse with the prostitutes at some point during the two evenings.

The owners of Dean Street Automotive testified, at trial, that there were several jars of petroleum jelly at their establishment and that it is customary for automotive mechanics to use it in their line of work. Appellant testified that he was a mechanic employed at Dean Street Automotive. He admitted taking Jones and McCauley to Dean Street Automotive for prostitution purposes but denied that he forced them to engage in anything that they were not comfortable doing. In regard to Jones, appellant alleged that they only engaged in oral sex, and that it was he, rather than Jones, who provided and wanted to use the condom. As for McCauley, he testified that he never told her that he had AIDS, nor did he refuse to pay her for oral sex. He maintained that he told her that he would pay her twenty dollars.

## LEGAL ANALYSIS

Appellant contends that the trial court should not have joined two unrelated cases involving separate victims of rape, sexual assault, and related offenses for trial. In support of his argument, appellant contends that the evidence involving the Jones and McCauley incidents was not mutually admissible

and should not have been considered in deciding each case. Additionally, appellant urges that he was prejudiced as a result of the joinder because the court actually considered evidence as to both cases in weighing credibility and in reaching its verdicts on each. He further posits that the fact that one woman did not consent to a sex act does not make it more likely that another woman also did not consent. The State replies that the trial court properly determined that the evidence was mutually admissible under the other crimes exception because a common scheme or plan was clearly present in both crimes.

 Maryland Rule 4–253 (2000) governs joinder of separate cases for trial and provides, in pertinent part:

(b) Joint trial of offenses. If a defendant has been charged in two or more charging documents, either party may move for a joint trial of the charges. In ruling on the motion, the court may inquire into the ability of either party to proceed at a joint trial.

(c) Prejudicial joinder. If it appears that any party will be prejudiced by the joinder for trial of counts, charging documents, or defendants, the court may, on its own initiative or on motion of any party, order separate trials of counts, charging documents, or defendants, or grant any other relief as justice requires.

Rule 4–253 applies to both jury trials and bench trials. The Court of Appeals, however, recognized that there is a fundamental distinction between the types of fact finders with respect to the court's discretion regarding the joinder of cases. *See Graves v. State,* 298 Md. 542, 544, 471 A.2d 701 (1984). In *McKnight v. State,* 280 Md. 604, 375 A.2d 551 (1977), the Court held that a judge, presiding at a jury trial, is precluded from joining cases when the evidence as to the offenses is not mutually admissible at separate trials. *Id.* at 612, 375 A.2d 551. The Court's reasoning for compelling separate trials in cases wherein the evidence is not mutually admissible stems from its "concern that a jury would be unable to set aside the likely prejudice engendered by joinder." *See Solomon v.*

*State,* 101 Md.App. 331, 341, 646 A.2d 1064 (1994), *cert. denied,* 337 Md. 90, 651 A.2d 855 (1995).

 Specific dangers that may arise from joinder at a jury trial include "difficulty in presenting separate defenses, cumulation of evidence by the jury bolstering a weaker case, and the danger that a jury may infer a criminal disposition on the defendant's part from which he may be found guilty of other crimes charged." *See McGrier v. State* 125 Md.App. 759, 764, 726 A.2d 894, *cert. denied,* 355 Md. 613, 735 A.2d 1107 (1999) (citing *McKnight,* 280 Md. at 609–10, 375 A.2d 551). Consequently, in a jury trial, the analysis of the joinder issue

> may be reduced to a test that encompasses two questions: (1) is evidence concerning the offenses or defendants mutually admissible; and (2) does the interest in judicial economy outweigh any other arguments favoring severance? If the answer to both questions is yes, then joinder of the offenses or defendants is appropriate. In order to resolve question number one, a court must apply the first step of the "other crimes" analysis announced in [*State v. Faulkner,* 314 Md. 630, 552 A.2d 896 (1989)]. If question number one is answered in the negative, then there is no need to address question number two; *McKnight* mandates severance as a matter of law.

*Conyers v. State,* 345 Md. 525, 553, 693 A.2d 781 (1997), *appeal after remand,* 354 Md. 132, 729 A.2d 910, *cert. denied,* —— U.S. ——, 120 S.Ct. 258, 145 L.Ed.2d 216 (1999). The first step prescribed by *Faulkner* is "the purely substantive determination of whether evidence of another crime is *prima facie* admissible, singly or mutually, by virtue of its utility to prove motive, intent, absence of mistake, identity, common scheme or plan, etc." *See Solomon,* 101 Md.App. at 343, 646 A.2d 1064. In sum, the judge "has to look to the circumstances under which evidence of 'other crimes' would be admitted in the trial of a single defendant on a single charge." *Id.* at 342, 646 A.2d 1064.

On the other hand, a judge presiding in a court trial is cloaked with "significantly more discretion on the severance/joinder issue than is permitted in a jury trial." *See Wieland v. State*, 101 Md.App. 1, 13, 643 A.2d 446 (1994). We noted that,

[e]ven when evidence is not mutually admissible, a situation where no discretion exists and where trial severance is absolutely mandated in a jury trial as a matter of law, the judge may nonetheless order a trial joinder in the interest of judicial economy for a court trial.

*Id.* Judge Moylan, writing for the Court, penned our reasoning for granting the trial judge greater latitude in a court trial on joinder issues:

The rationale for the significantly greater latitude—to wit, the discretion—is that the legally trained judge can weigh the factors of efficiency and economy against the possible prejudice to his [or her] own impartiality and can give reasonable assurance that his [or her] fact finding will be (or has been) meticulously segmented into watertight compartments, hermetically sealed off from any spill-over influences.

*Id.* Therefore, "[a] judge has the discretion to permit joinder of offenses or defendants even if there is no mutual admissibility of offenses because it may be presumed that a judge will not transfer evidence of guilt as to one offense to another offense." *See Conyers*, 345 Md. at 552–53, 693 A.2d 781.

In the case *sub judice*, we are asked to determine whether the trial judge erred by joining the Jones and McCauley cases for trial and in considering evidence of both victims in deciding each case. The record reveals that the trial judge joined the two cases because he believed that a common scheme between both crimes was present. He opined:

Okay. What's at issue here is the case motion, the, the State's Motion to Join these two, two indictments. And they argue that it's, it's a necessary part of their case. And [the prosecutor] is candid in saying that the quality of witness that he has is not that of a bishop. They're both

prostitutes, and he argues that it's necessary for him to bring these two cases together, one because there is a common scheme—the crimes, themselves, it's argued, were done in a similar manner; there's a pattern to them and that having been established will give greater credence to the testimony of the victims—and the Defense argues that its probative value is outweighed by prejudicial value. But I can't accept that. Under these circumstances it seems to me that the State's reasoning is sound. In order to accomplish their goal, they, it's necessary for them to proceed in this fashion, so I can't find, factually, that its probative value is outweighed by prejudicial value. So I'm gonna [sic] grant the motion to join. Okay.

Appellant contends, however, that the trial judge erred by joining the two cases because the evidence in each case was not mutually admissible, notwithstanding the State's assertion that it was admissible to show absence of mistake or a pattern of conduct. In reliance on cases from other jurisdictions, appellant argues that, absent propensity, the fact that he forced one woman to submit does nothing to prove that he forced another, because the fact that one woman did not consent to a sex act does not make it more likely that a different woman did not consent. We agree.

Although the trial court correctly recognized that the evidence of two unrelated crimes is mutually admissible when it is admitted pursuant to the motive, intent, identity, and common scheme exceptions, it erred in joining the cases because the evidence presented does not come within any of these exceptions. The trial judge joined the Jones and McCauley cases because appellant allegedly committed the rape and sexual assault employing the same *modus operandi.* Even though the evidence indicates that the sexual assaults committed in this case were perpetrated in a similar manner, the similarities do not establish that the offenses were part of a common scheme. In *Emory v. State,* 101 Md.App. 585, 613, 647 A.2d 1243 (1994), we explained the common scheme exception as follows:

> Wrongful acts planned and committed together may be proved in order to show a continuing plan or common scheme ... there must be evidence ... of one grand plan; the commission of each is merely a step toward the realization of that goal. The fact that the crimes are similar to each other or occurred close in time to each other is insufficient.

(Citations omitted.) The Court of Appeals further observed that, in order for cases to be joined based on the common scheme exception,

> it is necessary that the crimes, including the crime charged, so relate to each other that proof of one tends to establish the other. Moreover, there must be "not merely a similarity in results, but such a concurrence of common features that the various acts are naturally to be explained as caused by a general plan of which they are the individual manifestations." The concurrence of common features under this exception, however, must be more than simply a manner of operation, which is possessed to some extent by most criminal recidivists.... Thus, evidence of other crimes can be introduced under the common scheme exception only when the relationship between the time, place, circumstances or parties involved in the crimes is such that the uncharged crime or crimes "support the inference that there exists a single inseparable plan encompassing both the charged and uncharged crimes, typically, but not exclusively, embracing uncharged crimes committed in order to effect the primary crime for which the accused has been indicted."

*Cross v. State,* 282 Md. 468, 475–76, 386 A.2d 757 (1978) (citations omitted) (emphasis omitted). In other words, "there must be a causal relation or logical or natural connection among the various acts or they must form part of a continuing transaction to fall within the exception." *State v. Jones,* 284 Md. 232, 244, 395 A.2d 1182 (1979).

The court's decision to order joinder was based on its determination that a pattern in these two cases created a reasonable inference that the rape and assaults were perpe-

trated by the same person. The court reasoned that: 1) both Jones and McCauley were picked up by appellant while working as prostitutes on Pulaski Highway in the late night or early morning hours; 2) both crimes were committed within approximately one month of each other; 3) Dean Street Automotive was the place where both victims were brought for the purpose of engaging in sexual relations; 4) both victims were forced to take off their clothing and, subsequent to their refusal, to engage in sexual relations; 5) appellant forced both victims into the adjoining garage after they undressed and he also used Vaseline during both incidents;—in the Jones case, he used Vaseline when he raped her anally and vaginally and, in the McCauley case, he put Vaseline on his fingers and digitally penetrated her anally and vaginally—6) appellant forced both women over a car at Dean Street Automotive and, when he was finished with the sexual act, told each victim that he did not know yet what he was going to do with them; and 7) appellant advised both victims during the incident that he had AIDS and was going to infect them. Although admittedly similarities exist in both cases, the evidence presented does not establish the existence of a common plan or scheme.

In *McKinney v. State*, 82 Md.App. 111, 570 A.2d 360 (1990), we recognized two ways in which other crimes evidence may come within the common scheme or plan exception:

(1) a *modus operandi*, which is but one means of establishing identity ... or (2) a plan to commit one offense as part of a grand scheme to commit others, such as a theft of nitroglycerine for use in blowing open a safe. In the latter sense, the other crimes evidence in a separate prosecution of appellant for sexual contact with one child—*evidence of similar contact with a different child*—would not be relevant because it would not tend to prove that kind of common scheme.

*Id.* at 124, 570 A.2d 360 (emphasis added). Significantly, identity was not at issue in this case. Both victims testified that appellant was the perpetrator and appellant does not dispute driving both victims from Pulaski Highway to Dean

Street Automotive for the purpose of engaging in sexual relations. Because identity is not an issue in the instant case, evidence of *modus operandi* or signature is irrelevant in proving the sole disputed element of the crime, i.e., lack of consent. Consequently, such evidence is not mutually admissible in establishing a common plan, absence of mistake, or identity. *See Jones,* 284 Md. at 244, 395 A.2d 1182.

Dispositive of the question of the propriety of trying the two cases together is that joinder of the cases for trial was calculated to have the testimony of each victim bolster the credibility of the other. The State proffered that the evidence as to each case was mutually admissible to show absence of mistake or consent. Absent propensity, the evidence of lack of consent of one victim of rape is not probative on the issue of whether the other victim consented and may not be used as a basis for joinder. "The fact that one woman was raped, however, has no tendency to prove that another woman did not consent." *Lovely v. United States,* 169 F.2d 386, 390 (4th Cir.1948). It is clear from the record that no evidence of propensity to commit rape was established. Moreover, the record reveals that the court, in assessing credibility and weighing the evidence, considered the cumulative evidence as to both cases in reaching its verdict in each case; the result was prejudice to appellant because corroborating the credibility as to one victim's lack of consent with the testimony of the other was improper. The evidence was not mutually admissible for purposes of joinder. We hold, therefore, that, even though the case at bar involved a bench trial where the judge is accorded greater latitude, the evidence of two unrelated sexual offenses was not mutually admissible under any of the "other crimes" exceptions. Because joinder of the Jones and McCauley cases was improper, the judgments of the lower court are reversed.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE COUNTY REVERSED; CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**COSTS TO BE PAID BY BALTIMORE COUNTY.**