## RONALD T. EPPS *v.* STATE OF MARYLAND

[No. 1008, September Term, 1981.]

*Decided September 2, 1982.*

The cause was argued before MORTON, MOORE and LISS, JJ.

*J. Michael McLaughlin, Jr., Assigned Public Defender,* for appellant.

*Diane G. Goldsmith, Assistant Attorney General,* with whom were *Stephen H. Sachs, Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *John*

*Themelis, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

MOORE, J., delivered the opinion of the Court.

In this case appellant complains that he agreed to a bench trial on the condition that he would, if found guilty, receive only "one life sentence." He was convicted of three counts of first-degree murder and two counts of arson, for which he was sentenced to three concurrent terms of life imprisonment and two 30-year terms, also concurrent. These sentences, he contends, breached a bargain he had made with the State and invalidated his waiver of a jury trial. Also, he claims, the trial judge abused his discretion by denying the appellant's motion to sever the two arson counts, thus entitling appellant to new trials. We disagree, for the reasons stated, and shall affirm the convictions.

## I

Appellant, Ronald T. Epps, and Janice Witherspoon were friends and the parents of a baby girl before their "relationship" began to deteriorate in late 1979. Miss Witherspoon lived at 1526 Homestead Street in Baltimore, Maryland, the neighborhood of the various relatives and residents who testified at trial.

Roger Watson, who was married to Ms. Witherspoon's cousin, Verna, testified that he observed appellant coming from the rear of 1526 Homestead Street about 9 p.m. on March 5, 1980. That same evening, Ms. Witherspoon had gone to the Watsons' home to babysit and spend the night. Fire broke out in the Homestead Street residence at about 5:30 a.m. on March 6. Wardell Boroughs, who roomed on the second floor, and 13-year-old Paulette Preddy perished.[1] A neighbor, Renee Luttrell, testified that she talked to appellant at about 7 a.m. on March 6 a block away from the fire and he told her he had not heard about it.

---

1. Paulette Preddy, who died in the fire, was a niece of Mrs. Lawson; the latter was also Ms. Witherspoon's aunt.

Deborah Lawson, Ms. Witherspoon's guardian and aunt who lived at 2215-17 North Aisquith Street, testified that she received numerous telephone calls from appellant during March and April, sometimes two or three a day. "[H]e would say things like, you mother-fuckers are going to die. . . . It got so bad I had the phone off the hook for a period of time."

Ms. Witherspoon, who moved in with her aunt at 2215-17 North Aisquith in early April, testified that appellant told her on March 14 he would set her aunt's house on fire by climbing in through a basement window and starting a fire in the hallway near the stairs. Ms. Witherspoon related this conversation to her cousin Verna, and her aunt, Mrs. Lawson, who called the police. On April 16, 1980 at about 4 a.m., fire broke out at the Aisquith Street address. Sherron Pratt, Lewis Barnes, and Mrs. Lawson, all in the corner-lot building, testified that they heard an explosion and then saw smoke and flames. They escaped. Yvonne von Hendricks, however, was trapped on the third floor. She dropped her baby out the window, and Mr. Barnes caught the child in a blanket. She then jumped but Mr. Barnes "couldn't hold her;" she died from her injuries.[2] Later that day, police arrested appellant who denied any involvement.

Charles Cornell, a fire investigator, determined that the Homestead Street fire started on the first floor stairway in a large pile of clothing. At first he concluded that the cause was "careless smoking." Later, he determined that the fire had been intentionally set, probably by a match thrown on the pile of clothing. The fire at Aisquith Street was also deliberately set, also at the base of the stairway, with gasoline.

Clifton Brown, a fellow inmate of appellant at the Baltimore City Jail, testified that he had a conversation with appellant on April 29 when:

"[h]e started telling me about the fire he set in the

2. Mrs. Lawson, who saw Mrs. Hendricks jump, testified that "she was heavy and pregnant and her head hit the rocks in the yard of the house by the porch." Her child was stillborn.

"1500 block of Homestead Street . . . after the fire was set he ran . . . and stood on the corner and he seen somebody go in and bring somebody out on the sidewalk, . . . he told me he knew the little girl had got hurt in the house, she and her sister, . . . the house was the second or third house from the corner . . . and then he started telling me about the Aisquith Street fire . . . after he set the fire he stood out there and watched the lady, as she dropped the child out of the window and then he seen [*sic*] her jump from out of the window."

Appellant testified that he had known Ms. Witherspoon for two and a half years, that there were "no problems" with their relationship, that he was sleeping when both fires occurred, that on April 16, he was picked up at his home at about 5 a.m. to go to work,[3] that he never saw Clifton Brown or had any contact with him in jail, and that he did not set either fire.

After closing arguments, the court found appellant guilty of all five charges. Following a pre-sentence investigation, appellant was sentenced on December 29, 1980. This appeal followed.

## II

A criminal defendant's right to a jury trial is as fundamental as the maxim — innocent until proven guilty. It is guaranteed by the Constitution of the United States, U.S. Const.Amend. VI, applicable to the States through the Fourteenth Amendment, and by the Maryland Declaration of Rights, Arts. 5, 21 and 24. However, this right may be waived, as when the defendant pleads guilty, *State v. Priet,* 289 Md. 267, 424 A.2d 349 (1981), or elects to be tried by a judge. Md. Rule 735 (1981 Cum. Supp.); *Rose v. State,* 177

---

**3.** James Thomas testified that he picked up appellant between four and five a.m. on April 16 and drove him to a "joint" on Liberty Road, which appellant was supposed to clean. Appellant had been helping him at various nightclubs for two years, Mr. Thomas said. He added that he had called appellant's house earlier and his mother had said she would get him up.

Md. 577, 10 A.2d 617 (1940). "To satisfy constitutional due process standards, the waiver of the right to a jury trial must constitute an intentional relinquishment or abandonment of a known right or privilege." *Dortch v. State,* 290 Md. 229, 234, 428 A.2d 1220 (1981), *citing Boykin v. Alabama,* 395 U.S. 238 (1969).

Appellant here does not contend that he was uninformed of the nature of a jury trial or his right to it. Instead he claims that he waived a jury trial because the State promised he would get only "one life sentence," and the trial judge agreed to be bound by that promise.[4] Appellant argues that the cases construing Md. Rule 733 (Plea Agreements), Maryland Rules of Procedure, (1982 ed.), are so analogous to the bargain made by appellant that they should control. Once past this leap of logic, appellant concludes that the trial judge's failure to live up to the bargain requires a new trial. We cannot countenance the initial leap.

By its terms, Md. Rule 733 covers only guilty or *nolo contendere* pleas. Rule 733 c. (Agreements on Sentence, Disposition or Other Judicial Action) comes into operation only "[i]f a plea agreement has been reached pursuant to subsection a 6 of this Rule for a plea of guilty or nolo contendere. . . ." Subsection c is not at all applicable to a plea of not guilty — the plea in the instant case. Therefore, the reasoning of cases construing plea bargains, whose very existence is premised on pleas of guilty or *nolo contendere,* can have no application where the plea is not guilty. *Gray v. State,* 38 Md. App. 343, 356-7, 380 A.2d 1071 (1977). *See generally Santobello v. New York,* 404 U.S. 257 (1971); *McCormick v. State,* 38 Md. App. 442, 381 A.3d 694 (1978).

Further, the purpose of plea agreements is to expedite the processing of criminal defendants through the judicial system. The defendant agrees to give up something — the constitutional right to a jury trial, for example — to get

---

4. The State argues that appellant failed to preserve this issue for review because he neither objected to imposition of the sentence nor moved to modify it. Md. Rule 1085 (1982 ed.) and Logan v. State, 289 Md. 460, 487-8, 425 A.2d 632 (1981). We need not decide this issue.

something — a reduced charge, sentencing recommendation or other consideration outlined in Rule 733 a (Conditions for Agreement). *McCormick, supra; Miller v. State,* 272 Md. 249, 322 A.2d 527 (1974). This purpose and result are not analogous to the purpose of Rule 735 governing waiver of jury trial because there is no legal difference between jury trial and bench trial. Both modes of trial are considered equal, *Gilbert v. State,* 36 Md. App. 196, 210, 373 A.2d 311 (1977).[5]

More importantly, bargaining over the waiver of a jury trial is not now addressed by any procedural rule in this State. The fundamental right to a jury trial may be waived under Md. Rule 735; if it is to be subject to barter between a defendant and the State, the trial judge should be apprised fully of the nature and extent of the bargain.

(Whether it may properly be the subject of barter, a question we do not resolve, should be carefully considered by bench and bar.)

In this case, we observe that, after fully apprising the defendant on the record of the nature of jury and court trials, defense counsel went on to say:

> "*The State has indicated that in fact if you take a court trial and if you are found guilty* the State is not going to suspend your murder [sentences], but ask the Judge, if you are found guilty, that *the maximum sentence you get would be one life sentence.* Do you understand that? [Answer: Yes]." (Emphasis added.) [6]

---

**5.** Rule 735 b (Procedures for Acceptance of Waiver) is substantially the same as prior Rule 735 d (1981 Cum. Supp.) except for deletion of the "full knowledge" language. The waiver of jury trial has no application to the acceptance of a plea of guilty because in pleading guilty, the defendant waives his right to be tried at all. Matthews v. State, 46 Md. App. 172, 416 A.2d 1314 (1980) (construing Md. Rule 735 d). In pleading not guilty, even with an agreed statement of facts, the defendant retains the right to choose between a jury and a judge. But it is a choice of equals. The right to waive one over the other has no bearing on the right to plead not guilty.

**6.** Tactically, appellant's choice of a court trial was based on the theory, expounded by defense counsel in closing argument, that the situation was emotionally charged, and that the judge would rely only on proven facts to

Defense counsel then addressed the trial judge and the following colloquy occurred:

"MR. POLANSKY: If I understand the Court correctly, the Court is binding itself to that recommendation that if in fact Mr. Epps is found guilty of any charges in this case the maximum sentence would be one life sentence.

THE COURT: While the cases have been joined and we are proceeding as one case, they are all going to be heard together and if I find him guilty of either one he will get one life sentence?

MR. THEMELIS (State's Attorney): Yes, I am arguing for a life sentence.

MR. POLANSKY: And the Court will not exceed that sentence as being the maximum.

THE COURT: You are requesting me to bind myself to that if I so find him guilty.

MR. POLANSKY: Yes, sir.

THE COURT: Maybe I forgot the recommendation in my chambers, you want to approach the bench."

The bench conference was not recorded, but from the tenor of the questioning quoted above, it appears that the trial judge intended to straighten out defense counsel's apparent misconception. When the proceedings continued on the record, the trial judge stated his understanding of the State's position:

"THE COURT: The State made the recommendation that if the Court finds the defendant guilty the State has recommended the sentence be constricted to one life sentence, and any other sentences, if any, shall be concurrent."

---

find guilt beyond a reasonable doubt. He said: "I will start out by saying that one of the reasons that Mr. Epps decided on a court trial and to proceed this way is that he felt in his mind that we could submit an objective [sic] and the Judge could look at the facts in this case and not get tied up with any emotional argument, but keep an open mind."

Defense counsel then asked the defendant:

"Q Is that your understanding?

A If I be found guilty, the State is restricted only to give me one life sentence, I understand that.

Q I will ask you again, sir, that is, *has there been any inducement for you to take a court trial* and you understand what a jury trial is, do you have any questions?

A No.

Q Do you understand what a court trial is?

A Yes.

Q Do you have any questions in regard to a court trial?

A No, I do not.

Q Now, we have discussed that at length, have we not?

A Yes.

Q And you have to make that decision as to whether you want a court or jury trial?

A I prefer a court trial."

From the preceding exchange, appellant has artfully constructed his argument but factually there was no "deal." The judge did not agree that he would impose only one life sentence. He merely restated the State's recommendation. The defendant answered *negatively* when asked whether there had been any inducement to "take a court trial" and *affirmatively* when asked whether he understood the nature of the two modes of trial. Although it was improper for counsel to introduce a sentencing recommendation in the midst of *voir dire* on jury trial waiver, the waiver itself fully complied with Rule 735 b. As the trial judge stated:

"THE COURT: Let the record show that the Court observed the demeanor of the defendant to the response of his counsel's explanation of a jury trial or a court trial, and additionally, the explanation by the State and the Court has concluded that the defendant is intelligently and

knowingly waiving his right to a jury trial and is requesting a court trial."

The "bottom line" is, of course, that concurrent sentences are the functional equivalent of one life sentence. Appellant's counsel stated at oral argument that three life sentences and two 30-year sentences, even if concurrent, would be "held against" appellant when he became eligible for parole. However, the granting of parole is based on other factors, as set forth in Md. Ann. Code, Art. 41 § 112 (1978 Repl. Vol.).[7]

## III

Appellant argues that the trial court abused its discretion in denying his motion to sever the two arson charges on the basis of prejudicial joinder and lack of significant connection between the two incidents. We find no prejudice to appellant, ample connection between the two fires, and proper exercise of judicial discretion.

Maryland Rule 745 c (1981 Cum. Supp.) states that "[i]f it appears that any party will be prejudiced by the joinder for trial of charging documents, the court may order separate trials or grant any other relief justice requires." The rule, identical to its precursors, Md. Rules 734 and 735, *McKnight v. State,* 280 Md. 604, 607 n.1, 375 A.2d 551 (1977), is couched in simple language and is apparent in purpose, *Lewis v. State,* 235 Md. 588, 590, 202 A.2d 370 (1964), that is, to prevent any prejudice to the defendant, *Jones v. State,* 38 Md. App. 432, 435, 381 A.2d 317 (1978), *aff'd,* 284 Md. 232, 395 A.2d 1182 (1979). The absence of prejudice is the

---

7. The regulations to the statute expand on the factors to be considered by the Parole Commission, COMAR 12.08.01 18 A (Supp.3). Nowhere is the number of concurrent sentences specified as a factor. The circumstances surrounding the crime part of the decision-making process, as might be expected. Persons sentenced to life imprisonment are eligible for parole after serving a total of 15 years less credits for good behavior and industrial time earned. COMAR 12.08.01 17 A (3) (a). Only the Governor may grant parole to those serving life terms. COMAR 12.08.01 17 A (3) (b). *See* Hanson v. Hughes, 52 Md. App. 246, — A.2d — (1982).

fundamental concern, *Grandison v. State,* 32 Md. App. 705, 363 A.2d 523 (1976), and that determination is vested solely in the sound discretion of the trial judge. *Jennings v. State,* 8 Md. App. 312, 315, 259 A.2d 543 (1969). There is "no rigid rule and the only limitation is that courts will guard against injustice." *Wanzer v. State,* 202 Md. 601, 608, 97 A.2d 914 (1953).

As the Court of Appeals said in *McKnight, supra,* 280 Md. at 609-10:

> "In any given case of similar offense joinder, therefore, the trial judge must balance the likely prejudice caused by the joinder against the important considerations of economy and efficiency in judicial administration."

The case held that a defendant charged with similar but unrelated offenses is entitled to a severance where he establishes that the evidence as to each individual offense would not be mutually admissible at separate trials. *Id.* at 612.

Evidence of another crime is admissible if it falls within one of the exceptions to the general rule excluding such evidence. *Ross v. State,* 276 Md. 664, 350 A.2d 680 (1976). These exceptions are: motive, intent, absence of mistake, a common scheme or plan, handiwork or signature, and identity. If the State can establish mutual admissibility through one of these exceptions, the trial judge may then balance judicial efficiency and probative value against any prejudicial effect on the defendant. *Id.* at 669-70. *See generally McKnight, supra; Simms v. State,* 39 Md. App. 658, 388 A.2d 141, *cert. denied,* 283 Md. 738 (1978).

In this case, the State argued that the offenses were mutually admissible under one or both of two exceptions: common scheme — thoroughly analyzed by Judge Digges in *Cross v. State,* 282 Md. 468, 386 A.2d 757 (1978) — and/or motive. Appellant argues that the evidence was too tenuous to show any actual motive on his part or to establish any signature or handiwork exception as to how the fires were started.

The evidence, however, clearly establishes appellant's motive and common scheme. Rebuffed in his efforts to resume his relationship with Ms. Witherspoon, he planned how to harm her. The March 6, 1980 fire, which was deliberately set, occurred at Ms. Witherspoon's residence at 1526 Homestead Street. She was out babysitting that night. Ms. Witherspoon and appellant were then on "shaky ground" and she was "trying to get away from him." Appellant confessed to Clifton Brown, a fellow jail inmate, that he had set a fire in the 1500 block of Homestead Street.

In April 1980, Ms. Witherspoon moved to her aunt's residence at 2215-17 Aisquith Street, the scene of the second fire on April 16, 1980. Between March 6 and April 16, the aunt, Mrs. Lawson, who lived at the Aisquith Street address, received threatening phone calls from appellant. On March 14, 1980, appellant informed Ms. Witherspoon that he would set her aunt's house on fire. Further, appellant warned her that she was "asking for trouble" and that she had "better get out of the house." On April 16, at about 1 a.m., only hours before the fire, appellant called Ms. Witherspoon at the Aisquith Street address and told her "if [she] didn't come back to him there would be more tragedy in [her] family." He told her that "he had five dollars" and he "could easily go out and buy some gasoline instead of getting high." Clifton Brown also testified that appellant told him that he had set a fire on Aisquith Street.

In *Ellerba v. State,* 41 Md. App. 712, 727-30, 398 A.2d 1250, *cert. denied,* 285 Md. 729 (1979), this Court examined a joinder of two arson charges. Because the incendiary devices used to start the fires were not the same, we ruled that joinder was not proper under the "signature" or "handiwork" exceptions. *Id.* at 729-30. However, we recognized that a "common scheme or plan" exception would have been available if there had been evidence that appellant had started the fires to make and collect insurance claims. *Id.* at 730.

Unlike *Ellerba,* in this case there was evidence of a motive and a "common scheme or plan" in appellant's arson of the

residences of Ms. Witherspoon. Because the evidence of both offenses demonstrates a plan on the part of the appellant to get back at Ms. Witherspoon after the break-up of their relationship, both offenses meet the test of mutual admissibility under *McKnight, supra. See Mason v. State,* 12 Md. App. 655, 280 A.2d 753 (1971). Accordingly, the trial judge balanced the conflicting "considerations of prejudice and economy." *McKnight, supra,* 280 Md. at 610. We perceive no abuse of discretion in his decision to deny appellant's motion for severance.

> *Judgments affirmed; appellant to pay the costs.*