589 A.2d 513

**John OGONOWSKI**

v.

**STATE of Maryland.**

**No. 932 Sept. Term, 1990.**

Court of Special Appeals of Maryland.

May 6, 1991.

Norman R. Stone, III (Sutton, McCurdy & Stone, P.A., on the brief), Baltimore, for appellant.

Gwynn X. Kinsey, Jr., Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., and Stuart O. Simms, State's Atty. for Baltimore City, on the brief), Baltimore, for appellee.

Argued before BLOOM, ROSALYN B. BELL and DAVIS, JJ.

ROSALYN B. BELL, Judge.

We decide two questions in this case. The first question involves an agreement to cap a sentence in exchange for a jury waiver—specifically, whether being accused of another crime while on bail in the time between the trial and sentencing renders the cap unenforceable. We hold that under the terms of the agreement in this case the cap is enforceable and remand for resentencing. The second question is whether the court erred in denying severance of the case from that of a co-defendant. We hold the court did not err in denying the severance.

John Ogonowski and Stephen Grebelski were charged in 11–count indictments, including one count of possession of cocaine with intent to distribute, one of simple possession, two counts of possession of paraphernalia, two counts of common nuisance and five counts of conspiracy. Their consolidated cases came on for trial in the Circuit Court for Baltimore City.

## THE JURY WAIVER

On Friday, January 19, 1990, at 10:18 a.m., the court called the case for trial and pleas of not guilty were entered by both defendants. Both defendants requested a trial by

jury. Ogonowski was represented by counsel; Grebelski was not.

The trial court made a last minute attempt to secure a guilty plea from either or both of the defendants by offering to cap any sentence at 10 years in exchange for a guilty plea. As the jury was coming into the courtroom, the following exchange occurred on the record:

"[DEFENSE COUNSEL]: Next—the next issue I would like to address would perhaps be best addressed in chambers. I've had a discussion with the State's Attorney that I think I'd like to talk to you about.

"THE COURT: You may talk to me right now.

"[DEFENSE COUNSEL]: Regarding plea negotiations, if—

"THE COURT: Let me put it so that both of your clients can hear it.

"As of this moment, I am willing—the offer's going to expire. I am willing to limit myself not to exceed the offer of the State in this case, which is 10 years on each, with a presentence investigation report.

"I'll give you any length of time that you need to tell me about these two gentlemen at sentencing. I'd be the first to admit that I know nothing about them, absolutely nothing. All I know is the charges here. The charge says nothing. All I know is what the charges are. The charges are serious; however, if you reject this offer of the State at this time, then I withdraw my cap. And from then on, whatever happens, happens.

"[DEFENSE COUNSEL]: Would His Honor be willing to make the same cap in a—if the case was tried before the Court?

"THE COURT: Let me ask—you said you have a problem Monday. What are you going to do with the chemist? This has nothing to do with my answer, but I'm trying to figure out how many days this is going to take.

"[DEFENSE COUNSEL]: My case Monday is a plea in Baltimore County.

"THE COURT: Are we going to be able to finish this case this morning if this was a Court trial?

"(Pause.)

"THE COURT: Or are you going to ask [the Prosecutor]—

"[PROSECUTOR]: In other words, what he's asking is if it is a Court trial, will you stipulate.

"[DEFENSE COUNSEL]: I understand. Is the chemist still on the Maryland State Police?

"[PROSECUTOR]: Oh yeah, I talked to her yesterday at the lab.

"[DEFENSE COUNSEL]: Okay. Yes, if it was a Court trial, it would be one. I have my witnesses on call and would have them here promptly.

"THE COURT; You know the problem is Mr. Grebelski—I know a lot of Grebowski's, but I don't know any Grebelski's. So if I make a mistake in your name, it is unintentional.

"Do you want a jury trial or a Court trial, if Mr. Ogonowski takes a Court trial if I limit myself to—

"MR. GREBELSKI: Jury trial.

"THE COURT: He wants a jury trial.

"[DEFENSE COUNSEL]: Why?

"THE COURT: Well, your case can be tried by the Court. In your case, I will limit myself, but in his case, I will not.

"[DEFENSE COUNSEL]: Could I have just a moment to discuss that with my client?

"THE COURT: You do understand that the jury is going to be told that they're not going to be deciding this case, I'll be deciding his case?

"Is that what you want to do?

"[DEFENSE COUNSEL]: Well, I need to talk to him to make sure.

"THE COURT: All right. Well, go ahead out in the hallway and talk to him.

"[DEFENSE COUNSEL]: Thank you."

The court gave the jurors some tips on what to look for when walking around the courthouse until Ogonowski returned to the courtroom with counsel. The court excused the prospective jurors from the courtroom, and the following conversation took place on the record:

"THE COURT: All right. Call the case again, Mr. [Prosecutor].

"[PROSECUTOR]: Yes, Your Honor.

\* \* \* \* \* \*

"THE COURT: All right, Mr. [Prosecutor].

"Mr. Ogonowski, through [Defense Counsel], you have a change of request with respect to mode of trial?

"[DEFENSE COUNSEL]: Now, what His Honor is asking you, John Ogonowski, is that we initially had told His Honor we wanted a jury trial. It's my understanding that you have changed your wish, and you now desire a Court trial. *Now, that's with the understanding that His Honor, at the conclusion of the Court trial, if you were convicted of many [sic] of this case, is willing to cap the sentence at 10 years and request a presentence investigation. You would remain on bail until the presentence investigation is completed and appear for sentencing.*

"MR. OGONOWSKI: Okay.

"[DEFENSE COUNSEL]: Now, do you understand those negotiations?

"MR. OGONOWSKI: Yes.

"[DEFENSE COUNSEL]: Now, a jury trial is 12 people selected from the voter rolls of this city, who would decide your guilt or innocence beyond a reasonable doubt and to a moral certainty. Their verdict would have to be unanimous, twelve to zero for guilt and twelve to zero for acquittal. If for any reason they could not reach a unanimous verdict, that's termed a hung jury. His Honor would declare a mistrial, and you could be tried again, at the State's option, until a unanimous decision was reached. Now, do you understand what a jury trial is?

"MR. OGONOWSKI: Yes.

"[DEFENSE COUNSEL]: Do you wish to waive your right to a jury trial and be tried before [H]is [H]onor here today?

"MR. OGONOWSKI: Yes.

"THE COURT: All right. And you understand that you could also participate in the selection of a jury? I think that you—

"[DEFENSE COUNSEL]: No, I actually didn't say that.

"You would have a limited right to particiapate [sic] in the selection of the jury. You would have the right to excuse persons for good reasons or bad reasons or for any—

"THE COURT: In other words, you have a right to challenge people. Do you understand that? You've got 10 challenges for which you don't have to have any reason to make the challenge; you understand that?

"MR. OGONOWSKI: Yes.

"THE COURT: And knowing all this, do you still wish to waive your right to a jury trial, accepting a Court trial?

"MR. OGONOWSKI: Yes.

"THE COURT: All right. I find he voluntarily does so.

"And, Mr. Grebelski, you confirm your request for a jury trial?

"MR. GREBELSKI: Yes, sir."

The case was tried. Grebelski was found not guilty by the jury on all counts but simple possession. The court, however, rendered these verdicts on Ogonowski's case: [1]

Count One—Possession of Cocaine with Intent to Distribute—Guilty;

---

**1.** While not a common situation, in a consolidated trial one defendant may elect a jury trial and the other may elect a bench trial. The reason may be a tactical one; for instance, one may have a technical defense better understood by a judge. Even more rarely, in an appropriate case, two or more defendants have been provided separate juries within the same trial.

Count Two—Possession of Cocaine—Not Guilty (Merged);

Count Three—Possession of Paraphernalia—Merged into Count Four;

Count Four—Possession of Paraphernalia—Guilty;

Count Five—Common Nuisance—Guilty;

Count Six—Common Nuisance—Merged into Count Five;

Count Seven—Conspiracy—Merged into Count Five;

Count Eight—Conspiracy—Merged into Count Five;

Count Nine—Conspiracy—Merged into Count One;

Count Ten—Conspiracy—Merged into Count One;

Count Eleven—Conspiracy to Possess Cocaine—Guilty.

True to his word, the trial judge said:

"I am going to set this down for a presentence investigation as I agreed and leave them free on bail at the time that the presentence investigation is pending and set this for sentencing on the 7th of March 1990."

Then, in what could only happen in real life, Ogonowski had the incredible poor luck or judgment, depending upon one's point of view, to get involved with a Mr. Kursch. Kursch was wearing a wire and, as we later note, had connections with people who did not have Ogonowski's best interests at heart. Ogonowski, true to his word, appeared at sentencing, but in the company of a sheriff. The prosecutor addressed the court regarding the transcript made from the recorded conversations with Kursch and what was behind those conversations:

"Basically what it shows is that Mr. Ogonowski was the moving force behind what law enforcement officials call a reverse sting operation. In other words, he was contacted by an undercover informant over the telephone and both in person and those conversations were recorded and you can see in the transcript of the face to face conversation where Mr. Ogonowski checked the pockets and patted the body of the informant to see if he was wired for sound as it were and evidentally [sic] missed the transmitter which the State police used to record the conversation outside of the house at the time.

"To put it into a picture, what went on was Mr. Ogonowski was sort of the organizer and financier as it were of a deal where they were trying to buy two kilos of cocaine from the undercover informant. Each time Mr. Kursch got on the phone, the person who actually responded and took possession of the drugs, the State police drugs that were used in this case, he deferred to Mr. Ogonowski for direction in terms of when the money was ready, from whom it would be gotten, when and where to go pick the merchandise up.

"In the one conversation with the informant Mr. Ogonowski made a representation to the informant that Mr. Ogonowski was capable of dealing at least eight ounces of cocaine a week. We submit to the Court that this shows that Mr. Ogonowski was unrepented after having been found guilty in this Court, that he disregarded the mercy of the Court in allowing him to remain out on bond pending his disposition, and that that type of disrespect for the law and flaunting of the authority of this Court should weigh heavily against him at this disposition because of the magnitude of the original case where Mr. Ogonowski was apprehended in his home with 1.65 pounds of cocaine."

The prosecutor stated that, while "ten years still sounded like a good idea even after the Court trial," the intervening events made "at least fifteen years" more appropriate.

Counsel for Ogonowski, faced with a copy of the transcript, acknowledged that the State's assertions were "probably very accurate." He contended, however, that the court was bound by its ten-year sentencing commitment. The court then announced that, "I don't have anything in my records that I committed myself to ten years." Ogonowski, however, came to the sentencing hearing armed with a copy of the transcript and showed the court that he, in fact, had made such an agreement. The court then acknowledged the agreement, but decided he was no longer bound by his agreement. He rationalized that, because he allowed Ogonowski to remain free on bail pending sentenc-

ing and because Ogonowski violated a condition of his bond by engaging in criminal activity, the sentencing cap no longer applied. Encouraged by further argument from the State concerning public policy and the enforcement of an unconscionable agreement, the court stated:

"Here we are. First of all. My mind is in a state of even balance and I have no commitment to any sentence. However, I also rule that I am allowed to pass any sentence within the statutory area that is permitted in this case. In other words, I find that his conduct while out on bail is of such a nature as to release me from my prior commitment not to exceed a ten year sentence."

The court heard further argument from defense counsel and the State concerning the length of an appropriate sentence and sentenced Ogonowski as follows:

Count One: Twenty years in the Department of Correction, suspend all but seventeen years;

Count Four: Four years in the Department of Correction concurrent with Count One;

Count Five: Ten years in the Department of Correction consecutive to the sentence imposed in Count One, and suspended; upon release, five years supervised probation;

Count Eleven: Three years in the Department of Correction concurrent with Count One.

## THE CONTRACT

█ Ogonowski does not contest the voluntariness of his waiver. His sole argument surrounds the enforcement of the sentencing cap.

The State argues that implicit in the agreement was the condition that Ogonowski remain on bail and that he was charged with knowing that any criminal activity would result in a revocation of that bond. Hence, Ogonowski breached the agreement and the court could impose any legal sentence. Alternatively, the State argues that rescission is not available to Ogonowski as he failed to raise the issue below.

Ogonowski, on the other hand, contends that the court breached the agreement by refusing to honor his contractual agreement to limit the sentence to 10 years. He contends one of the remedies available to the nonbreaching party in the event of a material breach is complete rescission of the contract. He argues that rescission of a contract requires that each party be restored to the status quo which existed prior to creation of the contract. *See Lazorcak v. Feuerstein,* 273 Md. 69, 76, 327 A.2d 477 (1974); Restatement (First) of *Contracts* § 349 (1932).[2] Ogonowski also argues that his waiver of the right to trial by jury was his consideration for the bargain and that right must be restored to him by reversing his convictions and remanding this case for a new trial.

Alternatively, he argues that, since the waiver of a jury trial does not expedite the processing of defendants through the criminal justice system, as a guilty plea does, and is not addressed by any procedural rule, we should hold such a bargain violates public policy and is therefore void. On that theory, he suggests that, if the bargain is void, the waiver is void and the judgments should be reversed and a new trial ordered.

We do not agree with either of the parties fully. There is a paucity of cases on agreements conditioned on waiver of a jury trial. Nor are there any rules governing conditions attached to such a waiver. We decline, however, to declare that these agreements are void and conclude that the most appropriate vehicle for analysis is that of a contract. The court, for whatever reason, entered into a contract with Ogonowski for a consideration. That consideration was Ogonowski's waiver of a jury trial. The court agreed that for that waiver he would limit himself to a ten-year sentencing cap; that he would permit the defendant to remain on bond pending sentencing; and he would request a presen-

---

**2.** Section 349 discusses the remedy of restitution. Comment a states that the results reached by the remedy of restitution approximate the results reached by rescission.

tence report.[3] The agreement had limited terms and we will not rewrite the agreement. We should no more add a requirement to the contract that the defendant was required to remain at liberty than to add a requirement to the contract that the presentence investigation needed to be favorable. If the court or the State wanted to condition the sentencing cap on those terms, those terms should have been stated explicitly in the record.

The requirement that appellant be crime free was a part of the bond. The penalty for his act was a revocation of that bond. That did occur and appropriately. The contract for the jury waiver was in no way implicated in the bond revocation. It could have been made a term, but it was not. Ogonowski will be tried for the later act and if found guilty, sentencing will follow. We hold, therefore, that the agreement to cap the sentence at 10 years is enforceable and that the court breached that agreement in sentencing Ogonowski to 17 years.

Ogonowski is incorrect, however, in asserting that he is entitled to rescind his original jury waiver and to be retried before a jury. Ogonowski never requested this relief at sentencing. Instead, his attorney demanded the sole remedy of adherence to the ten-year cap. Thus, his rescission claim is now barred, both because it was not raised in the trial court, Rule 8–131(a), and because, as a matter of contract law, a party waives rescission where he does not promptly request that remedy and instead treats the contract as a "subsisting obligation." *Prince George's County v. Silverman*, 58 Md.App. 41, 59–60, 472 A.2d 104 (1984).

Even if the claim for rescission was not barred in this case, rescission would be inappropriate in this situation. While we find the case law on the enforceability of plea

---

**3.** The only reason for a presentence report was apparently to justify a lesser sentence. Although it could have been, the cap was in no way linked to the contents of the presentence report.

agreements and the remedy for a breach of such an agreement instructive, such case law is not dispositive. Like a plea agreement, an agreement to cap the sentence in exchange for a waiver of the right to a jury trial should be enforceable. *See Blinken v. State,* 291 Md. 297, 309, 435 A.2d 86 (1981), *cert. denied,* 456 U.S. 973, 102 S.Ct. 2235, 72 L.Ed.2d 846 (1982) (plea agreement is enforceable against both the State and the defendant). A defendant gives up a fundamental right in exchange for some type of favorable treatment by the State or the court in both situations. The similarities between the two situations end here, however.

Where a defendant has made a plea agreement and that agreement is breached by the State or the court, the defendant may elect either to enforce the agreement or withdraw his or her guilty plea and plead anew. *Miller v. State,* 272 Md. 249, 255, 322 A.2d 527 (1974). A defendant in a plea agreement has given up all the rights which accompany the right to be tried. Once such an agreement has been breached, it would be manifestly unfair to require the defendant to forego the enforcement of those rights.

The situation differs, however, when a defendant bargains away his right to a jury trial. This Court has held that there is no legal difference between a jury trial and a bench trial. *Epps v. State,* 52 Md.App. 308, 313, 450 A.2d 913, *cert. denied,* 294 Md. 622 (1982). The choice between a jury trial and bench trial is a "choice of equals." *Epps,* 52 Md.App. at 313 n. 5, 450 A.2d 913. Because the defendant has already been afforded a fair trial, it would be incongruous to require the State to retry the case.

For all the foregoing reasons, we hold that enforcement of the sentence cap is the appropriate remedy.

## SEVERANCE

Before trial and several times during trial, Ogonowski sought a severance. Ogonowski claimed prejudice because Grebelski was proceeding without counsel. Ogonowski contended Grebelski might inadvertently make some comment

that would be unfair as he was acting as his own counsel. Also, at one point there could have been a *Bruton* [4] problem in that the State had a statement by Grebelski that he resided with Ogonowski. That problem was cured, however, when Grebelski testified and was subject to cross-examination. Therefore, we will not concern ourselves further with that contention.

Under Rule 4–253(a), a trial court may conduct a joint trial of two defendants, even if they are charged in separate charging documents "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." If, however, one or both defendants "will be prejudiced" by such joinder, the court may require separate trials. Rule 4–253(c). The analysis applicable to joinder and severance of defendants under the foregoing provisions is essentially identical to the analysis applicable to joinder and severance of separate charges against a single defendant under Rule 4–253(b). *See Osburn v. State,* 301 Md. 250, 254, 482 A.2d 905 (1984).

The decision to join or sever defendants or charges is a matter within the trial court's discretion. *Frazier v. State,* 318 Md. 597, 607, 569 A.2d 684 (1990); *State v. Edison,* 318 Md. 541, 546, 569 A.2d 657 (1990); *Tichnell v. State,* 287 Md. 695, 711, 415 A.2d 830 (1980). The exercise of that discretion requires balancing the "prejudice" caused by the joinder against "the considerations of economy and efficiency in judicial administration." *Graves v. State,* 298 Md. 542, 544, 471 A.2d 701 (1984). "Prejudice" within the meaning of Rule 4–253 is a "term of art," and refers only to prejudice resulting to the defendant from the reception of evidence that would have been inadmissible against that

---

**4.** *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). That case held that admission of a codefendant's confession in a joint trial violated the defendant's right of cross-examination because of the substantial risk that the jury would look to those incriminating statements in determining the defendant's guilt, despite instructions to the contrary. *Bruton,* 391 U.S. at 126, 88 S.Ct. at 1622.

defendant had there been no joinder. *Osburn,* 301 Md. at 254–55, 482 A.2d 905. Under certain circumstances, joinder of defendants or charges results in a presumption of, prejudice. *See McKnight v. State,* 280 Md. 604, 611, 375 A.2d 551 (1977) ("other crimes" rule excludes evidence relevant to proof of criminal disposition because such evidence is generally more prejudicial than probative; prejudice will result from joinder whenever this rule is violated). Where the crimes arise out of a single, indivisible series of events, a common scheme or other such circumstances, however, no presumption is applied, and the defendant shoulders the burden of demonstrating prejudice. *See Frazier,* 318 Md. at 609–11, 569 A.2d 684; *Tichnell,* 287 Md. at 710–13, 415 A.2d 830.

In the present case, it was undisputed that the two charging documents against Ogonowski and Grebelski were, except for the indictment number, duplicates. Each one listed both of them as defendants. Moreover, the charges included continuing conspiracies between the men, a significant factor favoring a joint trial. *See Manuel v. State,* 85 Md.App. 1, 15–18, 581 A.2d 1287 (1990). Under these circumstances, it was Ogonowski's burden, not the State's, to show technical "prejudice" in the *Osburn* sense. *See Frazier,* 318 Md. at 611, 569 A.2d 684.

Although Ogonowski raised the severance issue at least six times at trial, he never advanced the specific facts necessary to satisfy this burden. Instead, he merely emphasized that: (a) Grebelski was proceeding pro se and therefore might inadvertently say or do things adverse to Ogonowski; (b) a supposed statement by Grebelski had not been provided in discovery; (c) that statement incriminated both Grebelski and Ogonowski by asserting they lived at the residence where the drugs were seized; and (d) Grebelski took the stand and testified in his defense.

The first two grounds clearly do not constitute technical "prejudice," as they do not involve evidence that would have been inadmissible in a severed trial. Moreover, Ogo-

nowski points to no statements by or actions of Grebelski that were prejudicial and resulted from his acting pro se. As to the third ground, the police officer's recounting of Grebelski's volunteered remark did not constitute a basis for severance, as the court excluded the statement except insofar as it pertained to Grebelski himself.[5] Finally, as to Ogonowski's fourth ground, he makes no effort at all to specify any particular incriminating facts advanced by Grebelski in his trial testimony that would have been inadmissible but for the joinder. Under these circumstances, Ogonowski never even *proffered* sufficient facts to satisfy his burden under *Frazier* of establishing technical "prejudice." Accordingly, as the court found, there was ample cause to reject Ogonowski's severance motion without any further inquiry.

CONVICTIONS AFFIRMED. SENTENCE VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS IN CONFORMITY WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY MAYOR AND CITY COUNCIL OF BALTIMORE.

---

5. Even had the trials been severed, Grebelski's implication of himself and Ogonowski would have been admissible in both trials as a declaration against penal interest. By inculpating both men, Grebelski increased his own exposure to the conspiracy charges.