726 A.2d 894

**Louis McGRIER**

v.

**STATE of Maryland.**

**No. 813, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

April 6, 1999

760

Michael R. Malloy, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Thomas K. Clancy, Asst. Atty. General (J. Joseph Curran, Jr., Atty. General, and David J. Taube, Staff Atty., on the brief), Baltimore, for appellee.

Argued before HARRELL, KENNEY, and JAMES S. GETTY (Ret'd, Specially Assigned), JJ.

JAMES S. GETTY, Judge, Ret'd, Specially Assigned.

Louis McGrier, appellant herein, was convicted by a jury in the Circuit Court for Baltimore City of two counts of first degree rape, two counts of kidnapping, robbery, and assault and battery. He was sentenced to consecutive terms of life imprisonment for the rapes, concurrent thirty-year terms for the kidnappings, ten years consecutive for the robbery, and ten years consecutive for the assault and battery.

In his appeal, appellant raises the following issues:

1. Whether the trial court erred by granting the State's motion to consolidate three separate cases for trial;

2. Whether the trial court erred by admitting the photographic array offered by the State;

3. Whether the trial court erred by denying appellant's motion to suppress his statement to a police officer;

4. Whether the trial court erred by overruling appellant's objection to final argument by the State;

5. Whether the evidence was sufficient to establish kidnapping;

6. Whether the trial court erred in failing to merge kidnapping into the convictions for rape.

## BACKGROUND

The offenses occurred on August 8, 17, and 23, 1996, at 1645 N. Calhoun Street in Baltimore City. The victims were three young women who gave the following accounts of being assaulted.

Kia Thomas, age fifteen, testified that she went to 1645 N. Calhoun Street at 8 a.m. to visit a friend in a first floor apartment. She entered the building, a man put his arm around her neck, dragged her down several steps, forced her against a wall, and had vaginal intercourse with her from behind. He struck her in the back of her head and threatened to cut her with a knife if she did not stop screaming. Seventeen days after the assault, the victim identified appellant from a photographic array shown to her by a police officer. At trial, she was asked if she could identify her attacker. Pointing to appellant, she said, "I think that's him right there." On the day of the assault, the witness described her attacker as a dark skinned black male in his 30's, wearing a blue shirt and blue jeans, with a bald head and some facial hair.

Crystal Harris, age 14, lived at the N. Calhoun Street address. On August 17 at 2 p.m., a man pulled her from the hall into the stairway leading to the cellar. He pulled her to a

landing six or seven steps down the stairway, threatened her, and then removed her shorts and had sexual intercourse with her. Before leaving, her assailant took a necklace and some money from her. The victim described her assailant as being bald, dark skinned, having a mustache, and resembling a bulldog. He was wearing a white Nike T-shirt, blue jeans, and tennis shoes. Nine days after being assaulted, the witness selected appellant from an array of six photographs.

Latisha Nelson, age 19, also resided in the N. Calhoun Street complex. At approximately 2 p.m. on August 23, she entered the building en route to the third floor. A man she later identified as appellant grabbed her from behind and said, "You look good, I want you." A fight ensued on the steps; the witness escaped to her apartment and appellant fled. She described him to the police as bald, wearing black sweat pants, a white tank top, and jewelry around his neck. Two days after the assault, the police asked the witness to accompany them to the first floor where she saw and identified appellant as her assailant.

Officer Keith Simmons testified that he went to the apartment building on August 25 in response to a complaint about a stranger in the building. He observed appellant in the hallway. The officer noticed that appellant was wearing a tank top, sweat pants, several necklaces, a bracelet, and a watch. He asked appellant why he was in the building and received three different answers: First appellant said he was visiting a male friend, then he said he was taking a shortcut, and finally he claimed he was visiting a female friend. During the discussion, Officer Simmons was holding the identification cards that appellant had produced. Officer Simmons had requested assistance when he and appellant first saw each other in the building. When Latisha Nelson arrived at the first floor, she identified appellant as the person who had attacked her and he was placed under arrest. At trial, appellant did not offer any evidence. Additional facts will be supplied as relevant to appellant's contentions.

764

## *DISCUSSION*

### Consolidation:

Appellant alleges that he was prejudiced by the trial court's consolidation of three similar but separate assaults attributed to him. The joinder, according to appellant, created the probability that the jury would cumulate the evidence and convict appellant, even though the evidence viewed on a case-by-case basis was allegedly insufficient.

Maryland Rule 4–253 governs joinder of separate cases for trial. In pertinent part, the rule allows either party to move for a joint trial and, if it appears that any party will be prejudiced by joinder of counts, charging documents, or defendants, the court on motion of a party, or on its own initiative, may order separate trials, or grant any other relief deemed just.

Under applicable case law, the Court of Appeals has established the rule that a severance is required where the evidence as to each offense would not be mutually admissible at separate trials. *See McKnight v. State,* 280 Md. 604, 612, 375 A.2d 551 (1977). The dangers that may arise from joinder include difficulty in presenting separate defenses, cumulation of evidence by the jury bolstering a weaker case, and the danger that a jury may infer a criminal disposition on the defendant's part from which he may be found guilty of other crimes charged. *Id.* at 609–10, 375 A.2d 551.

Appellant cites *McKinney v. State,* 82 Md.App. 111, 570 A.2d 360 (1990), in support of his argument against joinder. In that case, the trial judge joined three sexual offense charges against a camp counselor who allegedly touched three girls inappropriately over a four-day period. This Court held that evidence of the three separate assaults was not mutually admissible because the evidence did not fit any of the exceptions to the general rule of exclusion of other crimes. The exceptions include motive, intent, common scheme or plan, identity, opportunity, preparation, knowledge, and absence of mistake or accident.

*McKinney* does not help appellant. Concededly, other crimes evidence is not admissible if it has no relevance other than to show criminal propensities. We recognized in *McKinney* that other crimes evidence is admissible if it is relevant to any other material fact in issue.

In the case *sub judice*, unlike *McKinney* where the alleged perpetrator was known, the identity of the rapist was the primary issue at trial. The similarities in each of the three assaults were relevant to the identification of appellant as the perpetrator. All three incidents occurred in the same building within a fifteen day period, appellant returned for what proved to be a fourth time, all three assaults occurred in the daytime, all of the victims were attacked from behind, all three were teenage girls, all three gave similar descriptions, including a bald head and necklaces, although only one remembered him as resembling a bulldog.

This case is akin to *State v. Faulkner*, 314 Md. 630, 552 A.2d 896 (1989). In *Faulkner*, the defendant was convicted of robbing a grocery store on Friday, November 15, 1985. The State introduced evidence that the store had been robbed on Friday, April 19, 1985, and again on Friday, January 10, 1986. On each occasion, the robber wore a mask, gloves, and carried a bag and a .22 caliber handgun while standing on a checkout stand demanding money. The court of Appeals held that these details established a distinctive *modus operandi* that could be considered by the jury to prove identity. Admittedly, *Faulkner*, involved uncharged offenses rather than joinder, but it is apposite with respect to the mutual admissibility prong of the joinder test.

The court concluded that the State had shown a pattern or signature in these cases creating a reasonable inference that the assaults were carried out by the same person. We do not contend that no prejudice resulted from the joinder. Obviously, one charged with three crimes has a greater exposure if convicted than a defendant facing a single charge. That degree of prejudice, however, does not preclude the State from offering credible evidence that the three offenses

were committed by the same person. The court did not abuse its discretion by permitting a single trial.

**Photographic Array:**

Appellant alleges that the photographic array shown the victims was impermissibly suggestive and should have been suppressed. Of the six photographs in the array, five were developed from negatives while appellant's was a computer-generated digital photograph taken earlier on the day appellant was arrested. Detective Johnnie Young testified that he was unable to obtain a prior arrest photograph of appellant from the Baltimore City arrest files. Appellant's photograph was smaller and had a different texture than the other five.

Kia Thomas selected appellant's photograph, and Crystal Harris also identified appellant as her assailant. Appellant does not suggest that the six men depicted did not have similar features, which is the critical identification factor. The court did not find the difference in size and texture of the photographs sufficient to warrant suppression of the computerized photograph.

Factors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the accused, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. *Neil v. Biggers*, 409 U.S. 188, 199, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972); *accord, Jones v. State*, 310 Md. 569, 577, 530 A.2d 743 (1987), *vacated on other grounds*, 486 U.S. 1050, 108 S.Ct. 2815, 100 L.Ed.2d 916 (1988).

Applying the facts herein to the factors set forth above, we conclude under the totality of the circumstances that the trial court did not err in refusing to suppress the photographs. All of the victims had the opportunity to view appellant in close proximity during daylight. All gave the same general description of his physical features and approximate age, and the length of time from the assaults to the

viewing of a photographic array was approximately seventeen days.

### Incriminating Statements:

Appellant asserted that his responses to Officer Simmons should have been suppressed because he had not received *Miranda* warnings before being questioned about his presence in the apartment building.

Officer Simmons had responded to a call concerning a suspicious person being in the building. When he observed appellant in the apartment building, the officer asked him for identification and inquired why he was in the building. According to Officer Simmons, he did not give appellant any *Miranda* warnings because he was not under arrest and he could have left the area if he had decided to leave prior to the time that Latisha Nelson came downstairs and identified him.

█ Appellant was clearly a suspect in the assaults because he fit the description of the rapist given by the victims. The questioning, however, related to the reason for his presence in the building, which was a legitimate inquiry based upon the complaint Officer Simmons received. At that stage, the inquiry was informational, not custodial. Once appellant was identified as a rapist by one of his victims, he undoubtedly was not free to leave, but the preliminary questioning did not require *Miranda* warnings. *See Cummings v. State*, 27 Md.App. 361, 341 A.2d 294, *cert. denied*, 275 Md. 747 (1975), which is a scholarly and thorough analysis of *Miranda* authored for this Court by Judge Charles E. Moylan, Jr.

█ In *Cummings*, questioning of the driver of a motor vehicle involved in a fatal accident was held not to require compliance with *Miranda* where the interview was conducted in the noncustodial setting of a hospital room and the driver was not under arrest. The threshold in deciding the applicability of *Miranda* is whether the person being questioned has been taken into custody or deprived of his freedom in some significant manner.

In this case, appellant was not being subjected to interrogation in a coercive atmosphere such as a police station, a police vehicle, or any other similar setting. He was observed in an apartment building by a single police officer, who was responding to a complaint that a seemingly unauthorized person was in the building. Under those circumstances, it was entirely proper and necessary that the officer inquire why appellant was in the building, and demand that appellant produce some identification. The fact that the officer may have suspected that appellant could be the returning rapist does not alter the fact that appellant was not deprived of his freedom or coerced into admitting guilt. The focus was identity; the brief period that the officer held appellant's identification card while the victim of an earlier assault was summoned from her third floor apartment does not implicate *Miranda*.

**Rebuttal Argument:**

■ Appellant asserts that the State's characterization of appellant as being a "sexual predator" was prejudicial in that it was an effort to arouse anger in the minds of the jurors. The word "predatory" includes such synonyms as "plundering," "pillaging," and "rapacious." The evidence of sexual assaults upon three young women in the same building over a three-week period, if established beyond a reasonable doubt, would aptly describe the perpetrator as a sexual predator. The trial court also overruled appellant's objection to the State's reference to the victim's rights being entitled to consideration as well as the rights of the accused. None of the remarks by the State rise to the level of misleading or influencing the jury to the undue prejudice of the accused. Reversal, therefore, is not warranted. *See Oken v. State,* 327 Md. 628, 672, 612 A.2d 258 (1992), *cert. denied,* 507 U.S. 931, 113 S.Ct. 1312, 122 L.Ed.2d 700 (1993).

**Kidnapping:**

Appellant alleged that the evidence of asportation was incident to the rape and, therefore, insufficient to constitute the crime of kidnapping.

Maryland Code Article 27, sec. 337, defines kidnapping as follows:

> Every person, his counsellors, aiders, or abettors, who shall be convicted of the crime of kidnapping and forcibly or fraudulently carrying or causing to be carried out of or within this State any person, except in the case of a person under eighteen years of age, by a parent thereof, with intent to have such person carried out of or within this State, or with the intent to have such person concealed within the State or without the State, shall be guilty of a felony and shall be sentenced to the penitentiary for not more than thirty years.

The legislative intent in enacting this section of Article 27 was to broaden the common law crime of kidnapping to include the forcible or fraudulent carrying, or intent to carry a person within as well as without the State.[1] *Hunt v. State*, 12 Md.App. 286, 278 A.2d 637, *cert. denied*, 263 Md. 715 (1971).

Initially, we point out that a person convicted of a conventional kidnapping is subject to a severe penalty. The maximum sentence is thirty years incarceration. The Legislature, we conclude, did not intend that where the forcible carrying of a person was incidental to the commission of another felony, and not a true kidnapping, that **any** forcible movement of a person would nevertheless support a kidnapping charge.

If a kidnapping statute is construed too broadly, all types of lesser crimes, including assault, transporting persons for purposes of prostitution, petty street crimes, and minor sex offenses, could provide a basis for adding a charge of kidnapping and a possible thirty-year sentence. A true kidnapping is usually a prelude to some other crime such as extortion or hostage taking. Whether the "carrying" is incidental to the commission of another offense requires a case-by-case analysis of the factors set forth by the Court of Appeals in a thorough

---

1. Under common law, kidnapping was defined as the forcible abduction or carrying away of a man, woman, or child from his own country into another country. *Lester v. State*, 9 Md.App. 542, 266 A.2d 361, *cert. denied*, 259 Md. 733 (1970).

discussion by Judge Alan M. Wilner of the kidnapping statute. Aligning Maryland with the majority of states which have considered the dual sentencing issue, the Court, in *State v. Stouffer*, 352 Md. 97, 721 A.2d 207 (1998), stated the following:

> We align ourselves with the majority approach that examines the circumstances of each case and determine from them whether the kidnapping—the intentional asportation—was merely incidental to the commission of another offense. We do not adopt any specific formulation of standards for making that determination, but rather focus on those factors that seem to be central to most of the articulated guidelines.

The Court set forth for consideration the following five factors:

1. How far, and where, was the victim taken?
2. How long was the victim detained in relation to what was necessary to the commission of the other crime?
3. Was the movement either inherent as an element, or as a practical matter, necessary to the commission of the other crime?
4. Did it have some independent purpose?
5. Did the asportation subject the victim to any additional significant danger?

### Other Cases

The kidnapping cases we have reviewed are factually distinguishable from the case before us, primarily on the factors of the time involved in the commission of the offense, and in the asportation. For example, in *Lester v. State*, 9 Md.App. 542, 266 A.2d 361, *cert. denied*, 259 Md. 733 (1970), the victim was seized on a parking lot, forced into a car and driven some distance to a wooded area and raped, after which she was returned to the parking lot. In *Rice v. State*, 9 Md.App. 552, 267 A.2d 261, *cert. denied*, 259 Md. 735 (1970), the victim was taken forcibly from her home to an apartment several blocks away and kept all night. She was sexually assaulted and released the next day. An eleven-year-old was accosted while riding her bicycle in *Moore v. State*, 23 Md.App. 540, 329 A.2d

48 (1974). She was forced into her abductor's car and driven to an abandoned farmhouse and raped. In *Isaacs v. State,* 31 Md.App. 604, 358 A.2d 273, *cert. denied,* 278 Md. 724 (1976), kidnapping was established. In that case, the victim had stopped along the highway to question the occupants of a disabled vehicle which the victim recognized as belonging to a friend. He was forced to accompany the occupants in his own car for approximately sixty to ninety minutes from Pennsylvania into Maryland where he was taken into a wooded area and executed. *Carey v. State,* 54 Md.App. 448, 458 A.2d 90, *aff'd,* 299 Md. 17, 472 A.2d 444 (1984), involved an assault in an upstairs bedroom after which the victim was taken to the basement and locked in a closet for longer than one day. In upholding a conviction for kidnapping, the Court of Appeals said that the distance the victim had been transported was not significant, but the confinement occurred after the sexual assault had ended. Finally, in *Stouffer, supra,* the victim was forced into a car in Hagerstown, driven to a remote area, stripped, beaten and stabbed. He was then transported to another area and thrown into a ditch near the Pennsylvania Turnpike. The kidnapping ended with the death of the victim.

### This Case

Unlike all of the cases cited above, in the present case the asportation was limited to wrestling Kia Thomas from the first floor hallway to the third step on a stairway leading to the basement, and dragging Crystal Harris seven steps to a landing on the stairway. We shall address the factors as each relates to the undisputed facts.

### 1. How far and where was the victim taken?

The distance, which we agree is not necessarily controlling, was a matter of several feet from the hallway to the stairs leading to the basement. We can assume that that location was not beyond the hearing of anyone on the upper stairway, or the hallway, because appellant struck Kia Thomas and ordered her to stop yelling. We can reasonably conclude that appellant's purpose in taking the victims to the stairway

was to avoid being seen by anyone entering or leaving the building, because both incidents occurred during the daytime. Apparently, appellant intended to keep an escape route open by remaining in close proximity to the hallway, otherwise he could have taken each victim down to the basement. The "carrying" herein would not differ from wrestling the victim around a corner, or away from an open window, or into an alley. Such activity would constitute false imprisonment, but not kidnapping.[2]

## 2. Period of Detention.

Kia Thomas testified that she wrestled with appellant to keep him from removing her pants. That effort lasted for approximately two minutes, followed by appellant penetrating her from the rear and then turning her around and ejaculating on her clothing. He then ran from the building. Crystal Thomas, the fourteen-year-old, could not estimate the amount of time she spent with appellant. She said he removed her underwear, had intercourse with her, and took her necklace and ran out of the building. We think it is reasonable to conclude that the time involved was limited to the brief period necessary to complete the rape and flee from the premises. That conduct is inconsistent with an intent to kidnap.

## F. Was the movement necessary as an element of the rape?

As a practical matter, movement from the open hallway was prudent if not necessary in order to carry out the sexual assault.

## 4. Independent purpose.

There is no evidence of any independent purpose beyond having forcible sexual intercourse with the victims in this case.

---

**2.** False imprisonment is merely the unlawful detention of a person against his will. *Midgett v. State*, 216 Md. 26, 139 A.2d 209 (1958).

### 5. Additional significant danger.

The asportation was from the hallway to the steps leading to the basement. We perceive no significant danger by being on the stairs beyond that which was necessary to accomplish the assault. Additional significant danger usually relates to possible injury over and above those to which a victim of the underlying crime is exposed. *See State v. Logan,* 60 Ohio St.2d 126, 397 N.E.2d 1345 (1979). For example, leaving a victim of a rape or robbery in a remote area, or locking employees in a bank vault or in a freezer would suffice to support a kidnapping charge in addition to a charge of rape or robbery. The facts of the present case, however, present no separate animus to support a charge of kidnapping.

### *SUMMARY*

The issue herein is whether the restraint or movement of the victims was merely incidental to a separate crime, or whether it had a significance independent of the other offense. The answer requires careful scrutiny of the factors set forth in *Stouffer*. No single factor is dispositive of the issue.

Appellant received two consecutive life sentences for the rapes, plus twenty years consecutive sentences for robbery and assault. The sentences were appropriate. The thirty-year concurrent sentences for kidnapping must be stricken. The carrying or concealing was clearly incidental to the rapes. The record is devoid of any evidence of an intent to kidnap, which the statute requires. The singular purpose was to rape, which occurred, and for which appellant has been sentenced. Article 27, sec. 337 is a substantive criminal statute designed to punish severely those who forcibly deprive others of their liberty. It is not a "catch all" or "add on" to be used for punishment of other criminal acts.

**JUDGMENTS AFFIRMED AS TO FIRST DEGREE RAPE, ROBBERY, AND ASSAULT AND BATTERY. JUDGMENTS REVERSED ON BOTH KIDNAPPING CHARGES.**

774

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY MAYOR AND CITY COUNCIL OF BALTIMORE.