726 A.2d 880

**Alvaro Leonardo Garay PAZ**

v.

**STATE of Maryland.**

**No. 788, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

April 6, 1999.

730

732

Arthur A. DeLano, Jr., Assistant Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for appellant.

Steven L. Holcomb, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellees.

Argued before MOYLAN, EYLER and PAUL E. ALPERT (Ret., specially assigned), JJ.

PAUL E. ALPERT, Judge, Ret., Specially Assigned.

Alvaro Leonardo Garay Paz, the appellant, was charged with attempted first-degree rape, kidnapping, second degree assault, and false imprisonment. Prior to trial, he filed a motion to suppress a statement he had made to the police. The motion was heard by the Honorable Louise G. Scrivener. Judge Scrivener denied the motion. Appellant was convicted at a bench trial in the Circuit Court for Montgomery County (Hon. Michael D. Mason). of all four charges. Judge Mason sentenced appellant to a term of fifteen years incarceration for the attempted rape conviction, with all but four years suspended, and to a term of fifteen years incarceration with all but four years suspended for the kidnapping conviction. For sentencing purposes, the assault conviction was merged into the attempted rape conviction and the false imprisonment conviction was merged into the kidnapping conviction. Appellant presents three questions on appeal:

I. Was the evidence insufficient to sustain his convictions for attempted first-degree rape, kidnapping and false imprisonment?

II. Did Judge Scrivener err in denying his motion to suppress his statement to the police?

III. Did the trial court err by failing to merge his kidnapping conviction into his conviction for attempted first-degree rape?

We hold that the evidence was sufficient to sustain appellant's convictions for attempted first degree rape and false

imprisonment. The evidence was insufficient to sustain the kidnapping conviction. We further hold that Judge Scrivener did not err in denying appellant's motion to suppress.

## FACTS

During the early morning hours of December 8, 1996, Officers Kyle Cochran and John Marr of the Montgomery County Police Department were conducting a surveillance operation in a parking lot at the intersection of Piney Branch Road and Flower Avenue in Silver Spring. The officers were in plain clothes and were in an unmarked police car. They were assigned to that location because of an increase in street robberies there.

At approximately 1:40 a.m., Officer Cochran saw a woman approach a group of telephones "in a kind of courtyard area at a strip mall." The telephones were approximately 120 to 130 feet from the officers' location, on the other side of Flower Avenue. Officer Cochran also saw appellant standing near the telephones and looking at the woman. Appellant watched the woman while she was talking on the telephone.

The woman hung up the phone and began to walk toward the officers' location. Appellant approached the woman and spoke to her. The woman shook her head. She crossed Piney Branch Road, walking toward the officers. As she got nearer to the officers, they could hear her say "no" and could see her shake her head. As the woman got nearer to the officers, they heard her say, "no, no." She continued to shake her head. The woman and appellant passed the officers' vehicle, but on the opposite side of Flower Avenue. When appellant and the woman were between ten and fifteen feet past the officers' car, appellant grabbed the woman around the neck and began to drag her across Flower Avenue. When he did so, she screamed, "no" and "help" and "stop" over and over again. He dragged her between twenty and twenty-five feet, into "a dark kind of alley like area." According to Officer Cochran, "there was a fence and the lighting was much lower

there." During the incident, appellant did not attempt to take the victim's purse, her jacket, or anything else from her.

The officers "jumped out of the car to approach them to prevent ... what was happening from going on any further." They approached appellant and the woman. When Officer Cochran got closer to appellant, he saw that appellant was holding a small knife to the woman's neck and face. According to Officer Cochran, the woman was "very upset, almost hysterical.... She was crying uncontrollably." Officer Marr testified that she was "extremely hysterical, crying, screaming." She was trying to get away from appellant but was not able to do so. The officers identified themselves as Montgomery County police officers and arrested appellant. When Officer Cochran arrested appellant, the officer smelled alcohol on him.

After his arrest, appellant was taken to the Silver Spring District Police Station. He was interviewed in the processing room at the station. Officer Cochran sat three or four feet away from appellant, across a table from him. The officer did not smell any alcohol on him at that time.

Officer Cochran filled out the top of the Montgomery County Police Advice of Rights form. The officer asked appellant whether he had been drinking. Appellant replied, "yes, a few drinks." Appellant, however, had not stumbled or fallen while he was being transported to the police station, and he was able to move around without any problems. He was able to walk a straight line and was able to sit down without any problem. He spoke clearly, without slurring. Appellant told the officer that he spoke Spanish. The officer reported, however, that appellant "gave no indication that [appellant] didn't understand what [he] was saying to him in English." Although appellant spoke with a Spanish accent, Officer Cochran had no problem understanding appellant's English. The officer then read appellant his *Miranda* rights.[1] Appellant then made a

---

1. *See Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

statement to Officer Cochran. Officer Cochran wrote the statement in appellant's words, and appellant signed it. The statement was:

> I just left the club and saw a girl that I thought I knew walking alone on Piney Branch Road. When I saw her, I thought that we would fool around and maybe even have sex. I went to talk to her and she said leave me alone. Shut up. Then she started to run away from me and I ran after her. I tried to grab her from behind and did not realize that I had my knife in my hand at her neck. I remember her screaming no and help.

Neither appellant nor the victim testified at trial.

## DISCUSSION

### I.

Appellant's first contention is that the evidence is insufficient to sustain his convictions for attempted first-degree rape, kidnapping, and false imprisonment.

The standard of our review of the sufficiency of the evidence to support a criminal conviction is " 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " *Wiggins v. State,* 324 Md. 551, 567, 597 A.2d 1359 (citing *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)), *cert. denied,* 503 U.S. 1007, 112 S.Ct. 1765, 118 L.Ed.2d 427 (1992). Under Maryland Rule 8–131(c), we defer to the factual findings of the trial judge in a non-jury trial, unless clearly erroneous, and give due regard to the opportunity of the trial judge to observe the demeanor of the witnesses and to assess their credibility. *State v. Albrecht,* 336 Md. 475, 478, 649 A.2d 336 (1994); *Wiggins,* 324 Md. at 567, 597 A.2d 1359.

A. Attempted First Degree Rape:

Appellant sets out two reasons for his contention that the evidence is insufficient to sustain his conviction for attempted

first degree rape. First, he points out that his statement said only that he thought the victim was someone that he knew and that he "thought we would fool around and maybe even have sex." Appellant contends that there was no indication in the statement that appellant intended to have non-consensual forcible sexual intercourse. Second, appellant contends that there was insufficient corroborative evidence of the attempted rape. We disagree with both arguments.

In order to prove attempted rape, the State must establish both an existing intent to commit the substantive crime and conduct beyond mere preparation in furtherance of that intent. *Lane v. State,* 348 Md. 272, 294, 703 A.2d 180 (1997).

In the present case, Officers Cochran and Marr testified that the woman shook her head and said "no" to appellant. The officers testified that appellant grabbed the woman around the neck and dragged her into an alley holding a knife to her neck and face. The officers testified that she tried to get away from appellant but was unable to do so. Under the circumstances, there was ample evidence to support the trial court's conclusion that appellant's intent to have sex with the victim was in no way dependent upon her consent.

Furthermore, we believe that the trial court correctly concluded that "have sex" generally connotes sexual intercourse, and that there was sufficient evidence for him to conclude beyond a reasonable doubt that appellant's intention was to have forcible sexual intercourse with the victim.

There was also ample corroboration of appellant's statement that he intended to have sex with the victim.

[I]t is, of course, well settled that an extrajudicial confession of guilt by a person accused of crime, unsupported by other evidence, is not sufficient to warrant a conviction.

*Woods v. State,* 315 Md. 591, 615, 556 A.2d 236 (1989) (quoting *Bradbury v. State,* 233 Md. 421, 424, 197 A.2d 126 (1964)). As the Court of Appeals explained in *Woods,*

**738**

the extrajudicial confession must be supported by evidence, independent of the confession, which relates to and tends to establish the *corpus delicti, i.e.,* the facts that are necessary to show that a crime has been committed.

315 Md. at 616–17, 556 A.2d 236. Nevertheless,

it is not necessary that the evidence independent of the confession be full and complete or that it establish the truth of the corpus delicti beyond a reasonable doubt or by a preponderance of proof.

315 Md. at 616, 556 A.2d 236 (quoting *Cooper v. State,* 220 Md. 183, 190, 152 A.2d 120 (1959)). The supporting evidence "may be small in amount and is sufficient to establish the corpus delicti

if when considered in connection with the confession or admission, it satisfies the trier of fact beyond a reasonable doubt that the offense charged was committed and that the accused committed it."

315 Md. at 616, 556 A.2d 236 (quoting *Bradbury v. State,* 233 Md. at 424–25, 197 A.2d 126).

The testimony of the officers corroborated appellant's statement that he saw the victim, that he spoke to her, that she rebuffed him, and that she tried to get away.

As noted above, the testimony of the officers amply established that appellant was forcibly dragging the victim into an alley. In addition, Officer Cochran testified that appellant did not attempt to take the victim's purse, her jacket, or anything else from her, which indicated that his purpose was not robbery. The officers' testimony also corroborated appellant's admission that he had a knife. This evidence was sufficient corroboration of appellant's statement to satisfy the trier of fact beyond a reasonable doubt that appellant intended forcibly to rape the victim and that he grabbed her and dragged her into the alley as part of his intent.

■ Accordingly, appellant's statement was sufficiently corroborated to render the evidence sufficient to support his conviction for attempted first-degree rape.

B. Kidnapping and false imprisonment:

Common law false imprisonment is the unlawful detention of a person against his will. *Midgett v. State*, 216 Md. 26, 38–39, 139 A.2d 209 (1958). Kidnapping adds the requirement of "carrying the victim to some other place." *Johnson v. State*, 292 Md. 405, 432, 439 A.2d 542 (1982). False imprisonment is a lesser included offense of kidnapping. *Tate v. State*, 32 Md.App. 613, 615, 363 A.2d 622, *cert. denied*, 278 Md. 736 (1976). If kidnapping is proved, false imprisonment is also proved.

Appellant urges that this court adopt the reasoning of the New York Court of Appeals in *People v. Levy*, 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842, *cert. denied*, 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965), and hold that the kidnapping and detention of the victim were incidental to the attempted rape of the victim and did not constitute separate offenses.

Subsequent to the filing of appellant's brief (and that of appellee), our Court of Appeals filed its decision in *State v. Stouffer*, 352 Md. 97, 721 A.2d 207 (1998). There, Judge Alan M. Wilner, speaking for the Court of Appeals, noted that although the record did not precisely show where the victim was taken, a fair inference could be drawn that the distance of asportation "was a considerable one" and "not a situation where the victim was dragged a short distance into a nearby alley or building." The Court considered at length whether the Maryland kidnapping statute should be applied to situations in which the kidnapping was incidental to another crime. The Court reviewed commentary and cases from other jurisdictions which had dealt with the issue. The Court concluded:

> We align ourselves with the majority approach that examines the circumstances of each case and determines from them whether the kidnapping—the intentional asportation—was merely incidental to the commission of another offense. We do not adopt, however, any specific formulation of standards for making that determination, but rather focus on those factors that seem to be central to most of the

articulated guidelines, principally: How far, and where, was the victim taken? How long was the victim detained in relation to what was necessary to complete the crime? Was the movement either inherent as an element, or, as a practical matter, necessary to the commission, of the other crime? Did it have some independent purpose? Did the asportation subject the victim to any additional significant danger?

352 Md. at 113, 721 A.2d 207.

Those factors were the subject of careful analysis in *McGrier v. State*, 125 Md.App. 759, 726 A.2d 894 (1999). There, Judge James S. Getty reviewed other cases in which kidnapping convictions were upheld and noted certain factual distinctions, *i.e.,* in *McGrier* the asportation of one victim was limited to removal from a first floor hallway to the third step leading to the basement and dragging the other victim seven steps to a landing on a stairway. Reversing the kidnapping conviction, Judge Getty wrote for the Court:

> The carrying or concealing was clearly incidental to the rapes. The record is devoid of any evidence of an intent to kidnap, which the statute requires. The singular purpose was to rape, which occurred, and for which appellant has been sentenced. Article 27, sec. 337 is a substantive criminal statute designed to punish severely those who forcibly deprive others of their liberty. It is not a "catch all" or "add on" to be used for punishment of other criminal acts.

*McGrier*, 125 Md.App. at 773, 726 A.2d 901.

In the present case, there are factors that favor considering the kidnapping only as incidental to the attempted rape rather than as a separate and distinct crime. The victim was not taken far and, because the crime was interrupted, she was not detained long. Further, although asportation is not a necessary incident to a rape, in the present case, the apparent reason for taking the victim into the alley was to permit appellant to commit the rape in a more private place.

Accordingly, the evidence was insufficient to sustain appellant's conviction for the crime of kidnapping. The evidence was, however, sufficient to convict for false imprisonment as well as for attempted first-degree rape.

## II.

Appellant's second contention is that Judge Scrivener erred when she denied his motion to suppress the statement he made to Officer Cochran at the police station.

At the hearing on the motion to suppress, Officer Cochran testified about the events that led up to appellant's arrest.[2] The officer testified that appellant was arrested at approximately 1:40 a.m. and was taken to the Silver Spring District Police Station. Appellant was seated at one of the processing tables. Officer Cochran stated that appellant spoke English well enough for himself and Officer Marr "to understand him without any difficulty." Officer Cochran testified that he read appellant Montgomery County PD–50 Form, which is the Advice of Rights form.[3] The officer stated that he asked appellant his name and date of birth, and appellant answered the questions. The officer asked appellant if he had had anything to drink. According to Officer Cochran, appellant told him that he had had a few drinks. Officer Cochran testified that he read each phrase from the form verbatim and

---

2. The testimony at the motion to suppress was substantially similar to that presented at trial. Because appellant's contention is based solely on the events that transpired after his arrest, we shall not repeat here the testimony regarding the events leading up to appellant's arrest.

3. According to the transcript, Officer Cochran referred to the form as Montgomery County PD–54 Form. Apparently, he was referring to the MCP–50, which is the Montgomery County Police Advice of Rights Form. In fact, the transcript subsequently refers to the form as the MCP–50. This form was also admitted into evidence as Exhibit 3 at appellant's trial. The form lists the four phrases which are given in compliance with the United States Supreme Court's decision in *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966): 1. You have the right now and at any time to remain silent; 2. Anything you say may be used against you; 3. You have the right to a lawyer before and during any questioning; 4. If you cannot afford a lawyer, one will be appointed for you.

that he put an "x" after each phrase to verify that appellant acknowledged that he understood the phrase. Officer Cochran further testified that after reading appellant his rights, he asked the appellant whether he understood what had been read to him. According to the officer, appellant answered "yes" in English.

Officer Cochran testified that he then asked appellant whether he wanted to talk to him. According to Officer Cochran, appellant answered, "Sure." The advice of rights form was admitted into evidence as Exhibit 3.

Officer Cochran further testified that appellant appeared to be sober. The officer stated that appellant's speech was not slurred and that the smell of alcohol was not as strong as it had been when appellant was arrested. According to Officer Cochran, appellant signed the form and had no trouble doing so.

On cross-examination, Officer Cochran testified that the woman who appellant had accosted also came to the station and made a statement. Officer Marr interviewed the woman at the police station. She made a statement at 2:55 a.m. Appellant's statement was made at 4:30 a.m.

Appellant testified at the motion hearing, through an interpreter. According to appellant, after he was arrested, he was taken to the police station. An officer asked him to give his version of what had occurred. According to appellant, the officer did not write down what he told him. Appellant conceded that he signed a paper on which the officer had written, but testified that the officer did not tell him that he was not required to answer questions, that he could have a lawyer present during the questioning, or that anything he said could be used against him. Appellant testified that the officer did not ask him whether he wanted a lawyer. According to appellant, he signed the form presented by the officer after the officer questioned him about what had happened that evening.

Officer Marr testified as a rebuttal witness that Officer Cochran advised appellant of his rights and that appellant

signed the Advice of Rights form before he made the statement. He corroborated Officer Cochran's testimony that appellant was sober and that appellant spoke English. Officer Marr stated that he interviewed the victim before Officer Cochran interviewed appellant. He explained that appellant had been in a holding cell at the police station until the officers had completed the paperwork and were ready to interview him. He stated that the officers did not interview appellant until approximately 4:20 a.m.

The Court denied appellant's motion to suppress his statement. She specifically found from the evidence that appellant was advised of his rights prior to his giving his statement. Appellant contends that the trial court should have granted his motion to suppress. He notes that there was a three-hour gap between his arrest and the time that he signed the written waiver, apparently contending that the delay supports appellant's testimony that appellant made a statement prior to being given *Miranda* warnings.

In reviewing the denial of a motion to suppress, we consider only the record of the hearing on the motion to suppress, not that of the trial itself. *Trusty v. State*, 308 Md. 658, 521 A.2d 749 (1987); *Aiken v. State*, 101 Md.App. 557, 647 A.2d 1229 (1994), *cert. denied*, 337 Md. 89, 651 A.2d 854 (1995). We review the evidence in the light most favorable to the prevailing party. *McMillian v. State*, 325 Md. 272, 600 A.2d 430 (1992); *Riddick v. State*, 319 Md. 180, 571 A.2d 1239 (1990). While we accept the findings of disputed fact unless clearly erroneous, after having given due regard to the lower court's opportunity to assess the credibility of witnesses, we make our own constitutional appraisal as to the effect of those facts. *McMillian v. State, supra; Riddick v. State, supra.*

In a criminal cause, when the prosecution introduces an extrajudicial confession or admission given by the defendant to the authorities, the basic rule is that it must, upon proper challenge, establish by a preponderance of the evidence (1) that the statement was obtained in conformance with the dictates of *Miranda v. Arizona, supra,* and (2) that the

statement was given voluntarily. *See Lodowski v. State,* 307 Md. 233, 250, 513 A.2d 299 (1986). Appellant's contention here is solely that he was not given his *Miranda* warnings prior to making his statement.

■ At the motions hearing, Officers Cochran and Marr testified that Officer Cochran read appellant his *Miranda* warnings before appellant made a statement. Officer Marr explained the three-hour time span between appellant's arrest and his giving of the statement as the time necessary for interviewing the victim and completing the required paperwork. Judge Scrivener clearly believed the officers' testimony rather than appellant's, and she was entitled to do so. She did not err in suppressing appellant's motion to suppress.

### III.

At the sentencing hearing, the trial court addressed the issue of merger as follows:

> I do agree with [defense counsel] that under the facts and circumstances of this particular case for sentencing purposes, that the kidnapping should merge into the first degree—I am sorry, the attempted first degree rape. It was part and parcel of what contributes to the first degree rape.

The trial court nonetheless sentenced appellant to a concurrent fifteen year term of incarceration for the attempted rape conviction and a concurrent fifteen year term of incarceration for the kidnapping conviction, suspending all but four years of each term.[4] Appellant contends that under the rule of lenity, his conviction for kidnapping should merge into his conviction for attempted first degree rape. Given our reversal of the kidnapping conviction, this issue is moot. On remand, the

---

4. The trial court merged the assault conviction, for sentencing purposes, into the attempted rape conviction and merged the conviction for false imprisonment, for sentencing purposes, into the kidnapping conviction.

trial court needs to address sentencing for the false imprisonment.

**CONVICTION FOR KIDNAPPING REVERSED; JUDGMENTS AFFIRMED IN ALL OTHER RESPECTS. CASE REMANDED FOR FURTHER PROCEEDINGS IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID TWO-THIRDS BY APPELLANT AND ONE-THIRD BY MONTGOMERY COUNTY.**